No. 79–1735. JARRETT *v.* JARRETT. Sup. Ct. Ill. Certiorari denied. 

JUSTICE BRENNAN, with whom JUSTICE MARSHALL joins, dissenting.

This petition raises the significant question whether the State may deprive a divorced mother of the custody of her children through operation of a conclusive presumption that her cohabitation with an unmarried adult male constitutes custody not in the best interests of the children, however strong the contrary evidence. Because the decision below [1] conflicts with the import of relevant precedent of this Court, I dissent from the denial of a writ of certiorari.

---

[1] 78 Ill. 2d 337, 400 N. E. 2d 421 (1979).

In December 1976, petitioner Jacqueline Jarrett was divorced from respondent Walter Jarrett. Jacqueline was given custody of their three daughters, then aged 12, 10, and 7. Jacqueline was also awarded use of the family home and child support; Walter had visitation rights, and the children regularly spent their weekends with him. In April 1977, Jacqueline told Walter that her friend, Wayne Hammon, was going to move into the family home. Walter objected and one week later filed a custody modification petition, seeking custody of his children on the grounds that he objected to his ex-wife's nonmarital relationship and did not wish his daughters to be raised in what he regarded to be an immoral atmosphere.

Following a hearing at which Jacqueline, Walter, and Hammon testified, the Circuit Court modified its original decree and granted custody of the children to Walter, finding the custody change necessary for the "moral and spiritual well-being and development" of the children. 78 Ill. 2d 337, 342, 400 N. E. 2d 421, 422 (1979). The Appellate Court reversed, reasoning that the Circuit Court made no finding and identified no evidence that Jacqueline was unfit to retain custody and, further, that there was no evidence that the change in custody was necessary to serve the best interests of the children.

A divided Illinois Supreme Court reversed the Appellate Court and reinstated the Circuit Court's modified custody decree. Applying the Illinois rule that a change in custody will be ordered only if necessary to serve the best interests of the child, the State Supreme Court found that Jacqueline's ostensible violation of the Illinois fornication statute [2] evinced a "disregard for existing standards of conduct [that] instructs her children, by example, that they, too, may ignore

[2] Section 11-8 of the Criminal Code of 1961 provides that "[a]ny person who cohabits or has sexual intercourse with another not his spouse commits fornication if the behavior is open and notorious." Ill. Rev. Stat., ch. 38, § 11-8 (1977).

them, and could well encourage the children to engage in similar activity in the future." *Id.,* at 346–347, 400 N. E. 2d, at 424 (citations omitted). The court, therefore, concluded that retention of custody by Jacqueline adversely affected the best interests of the children since there was a possibility of harm to them, even though it might become manifest only in the future, there being no showing of current actual harm.[3] *Stanley* v. *Illinois,* 405 U. S. 645 (1972), was distinguished on the ground that *Stanley* invalidated a conclusive presumption that an unwed father is unfit to exercise custody over his children, whereas the conclusion in the instant case rested not on a conclusive presumption, but on a finding reached after Jacqueline was afforded a full hearing on the question whether she was an inadequate parent.

The decision of the Illinois Supreme Court that, in effect, a divorced woman's ostensible violation of the Illinois fornication statute presumptively harmed the best interests of the children and that this was conclusive for purposes of custody presents a serious question under the Fourteenth Amendment. Giving conclusive effect to such a violation would appear to contravene the teaching of *Stanley* v. *Illinois:*

> "It may be, as the State insists, that most unmarried fathers are unsuitable and neglectful parents. It may also be that Stanley is such a parent and that his children should be placed in other hands. But all unmarried fathers are not in this category; some are wholly suited to have custody of their children. . . . Given the opportunity to make his case, Stanley may have been seen to be deserving of custody of his offspring." *Id.,* at 654–655 (footnotes omitted).

I had supposed that *Stanley* established the proposition that "the interest of a parent in the companionship, care, custody,

---

[3] The best interests of the child may be sufficiently adversely affected to justify custody modification under Illinois law where, *inter alia,* "the child's present environment endangers seriously his physical, mental, moral or emotional health. . . ." Ill. Rev. Stat., ch. 40, § 610 (b)(3) (1977).

and management of his or her children," *id.*, at 651, cannot be determined by the evidentiary shortcut of a conclusive presumption. Thus, for purposes of this case, *Stanley* would seem to foreclose custody modification on the basis of a similar conclusive presumption of serious adverse effect on the children's best interests despite whatever contrary evidence may have been or might be adduced. This is particularly true since there is no rational basis for the conclusive presumption actually utilized, whether Jacqueline is viewed as having violated the fornication statute only or as being a lawbreaker generally.

Nothing in the record or in logic supports a conclusion that divorced parents who fornicate, for that reason alone, are unfit or adversely affect the well-being and development of their children in any degree over and above whatever adverse effect separation and divorce may already have had on the children. Illinois seldom, if ever, enforces its fornication statute [4] and therefore can hardly contend that there is a rational correlation between divorced parents who fornicate and divorced parents who impair the healthy development of their children.

Nor can Jacqueline be presumed to have an adverse effect on her children's well-being because she is a lawbreaker, for surely such a presumption would be irrationally overbroad. It would make no sense to treat murder, fornication, and traffic violations similarly for purposes of custody modification. If Illinois' enforcement record is an indication of how important it views violations of various laws, it appears that Illinois attempts to enforce its traffic laws more frequently than its "seldom-enforced fornication statute." 78 Ill. 2d, at 352, 400 N. E. 2d, at 427 (Moran, J., dissenting). If Jacqueline had violated Illinois' traffic laws, she might have lost her driver's license, but surely not custody of her children.

---

[4] Illinois did not enforce its fornication statute in this case.

Moreover, not only is there no basis for conclusively presuming that Jacqueline's cohabitation would adversely affect her children sufficiently to justify modification, but also any such conclusion is unequivocally rejected by the record which affirmatively shows that the "children were healthy, well adjusted, and well cared for." *Id.*, at 351, 400 N. E. 2d, at 426 (Goldenhersh, C. J., dissenting). There was no evidence of actual harm; nor was there evidence, statistical or otherwise, to suggest that the children's current exposure to their mother's cohabitation might result in harm to them that might become manifest only in the future. Surely, in any event, it is no more likely that divorced mothers who fornicate are unfit than are unwed fathers. Thus, this case squarely presents the question whether the Due Process Clause entitles Jacqueline to a meaningful hearing at which the trial judge determines, without use of a conclusive presumption, whether violation of the fornication statute adversely affects the well-being of the children.

Further, we should grant the petition and address the constitutional question it so clearly presents because the answer to that question has important implications for many households. The 1978 Census Bureau Statistics cited by the Illinois Supreme Court reveal that there are 1.1 million households composed of an unmarried man and woman and that upwards of 25% of those households also include at least one child. *Id.*, at 345, 400 N. E. 2d, at 424. While the statistics do not reveal how many of these households were formed after a divorce, and with respect to which the noncustodial divorced parent may be able to seek custody, the crude figures alone suggest that the custodial pattern is a pervasive one.

Accordingly, I dissent from the denial of certiorari and would grant the petition and set the case for oral argument.

Mr. Justice Blackmun also dissents from the denial of certiorari and would set the case for argument.