*In re* MARRIAGE OF STEPHEN CLAIR OLSON, Petitioner-Appellant, and NORMA JEAN OLSON, Respondent-Appellee.

Third District    No. 80-479

Opinion filed July 23, 1981.

Samuel S. McHard, of Katz, McAndrews, Durkee & Telleen, of Rock Island, for appellant.

Betty L. Beer, of Allen and Beer, of Aledo, for appellee.


Mr. JUSTICE ALLOY delivered the opinion of the court:

The petitioner, Stephen Olson, appeals from the judgment of the Circuit Court of Mercer County, denying his petition for modification of child custody and for termination of child-support and maintenance payments to his ex-wife, respondent Norma Olson. The marriage of the parties was dissolved on January 17, 1980. They had been married seven years, and have one child, four-year-old Jonathan.

Pursuant to a separation agreement which was incorporated by reference into the judgment, custody of Jonathan was vested in Mrs. Olson. Also pursuant to this agreement, Mr. Olson was ordered to pay his ex-wife a lump sum of $6,000 and periodic maintenance payments of $400 per month for five years. Mr. Olson also agreed to pay child support of $151 per month, such payments to be increased by 5% each year. On July 25, 1980, Mr. Olson filed a petition to modify the judgment as to custody of the child, periodic maintenance, and child-support payments. Hearing was held on August 13, 1980. On August 18, 1980, the court filed a written opinion and order, denying the petition in full.

The evidence indicates that, shortly after the dissolution of the parties' marriage, Mrs. Olson began an admittedly sexual relationship with Robert McAllister. This relationship has continued through the date of the hearing. During the marriage of the parties, Mrs. Olson did not work. For a little more than a month subsequent to the dissolution of the marriage, Mrs. Olson resided in the former marital residence, pursuant to agreement. Also pursuant to the agreement of the parties, she moved from there on March 1, 1980. On May 19, she began working five days a week for seven hours per day. Her pay is $3.25 per hour. This totals a gross of $113.75 per week, but the only evidence on record of her net salary indicates that it is $93 per week.

The petitioner claims that the relationship between Mrs. Olson and Mr. McAllister is such that an environment has been created which seriously endangers Jonathan's mental, moral, and emotional health. Accordingly, he asked that the court change custody of Jonathan from Mrs. Olson to himself. Ill. Rev. Stat. 1979, ch. 40, par. 610(a), (b).

Mr. Olson claims that his former wife and Mr. McAllister are living in a state of open and notorious fornication, and that the mental, moral, and emotional health of his son is thereby adversely affected. The trial court found, and the evidence indicates, that Mrs. Olson and Mr. McAllister are engaged in a relationship which includes sexual intimacy. They frequently spend the night together, and Mrs. Olson has occasionally cooked meals for Mr. McAllister, especially when the latter's children have visited him. She has, on occasion, washed his clothes and done ironing for him. She has washed the dishes after eating a meal at his apartment. She has driven his car. She has held hands with him in public, and has kissed and hugged him in front of Jonathan. Prior to the filing of the petition, she had a key to his apartment. She has given him small gifts. He visited her when she was ill. The evidence indicates that Mrs. Olson has often taken Jonathan to Mr. McAllister's apartment. The evidence also indicates that Jonathan never spent the night in McAllister's apartment, nor did McAllister ever spend the night in Mrs. Olson's apartment when Jonathan was present. There is no indication that the couple engaged in sexual intimacy while Jonathan was present in the residence. Mrs. Olson testified that she and Mr. McAllister only engaged in sexual relations when Jonathan was visiting his father. Mrs. Olson and Mr. McAllister spent most of the month of July together. Except for two days of that month, Jonathan resided with his father during all of July. There is no evidence that Jonathan was aware of any sexual intimacy between his mother and Mr. McAllister. The court found that Jonathan was not adversely affected by his mother's relationship with Mr. McAllister.

■■ ■ In *Jarrett v. Jarrett* (1979), 78 Ill. 2d 337, 400 N.E.2d 421, our supreme court affirmed the trial court's judgment that the resident presence of the mother's paramour might adversely affect the moral and emotional health of three daughters, aged 12, 10, and 7. In that case, the girls inquired whether the mother and her lover intended to marry, to which the mother responded that they did not at that time. The mother also indicated that she found nothing wrong in her relationship with the man and freely discussed that relationship with her daughters and neighbors. The court in that case also confirmed the long-standing rule that "the guiding principle in custody adjudications is the best interests of the child," and noted that the Illinois Marriage and Dissolution of Marriage Act "command[s] that no change be made in custody unless the harm inherent in any change in custody is outweighed by the advantages

to the child of the new environment" and "recognize[s] that continuity in the child's environment is in itself important." (78 Ill. 2d 337, 344.) Sections 602 and 610 of the new act command the court "to consider only whether the child's environment endangers his physical, mental, moral and emotional health (Ill. Rev. Stat. 1977, ch. 40, par. 610) and to disregard any conduct of the custodian that does not affect his relationship with the child (Ill. Rev. Stat. 1977, ch. 40, par. 602)." (*Jarrett v. Jarrett* (1979), 78 Ill. 2d 337, 344-45, 400 N.E.2d 421.) The trial court should focus its attention on the moral values which the parent is actually demonstrating to the children. (*Jarrett v. Jarrett* (1979), 78 Ill. 2d 337, 347, 400 N.E.2d 421.) We believe the trial court applied such criteria in the instant case. In the presence of the child, Mrs. Olson has expressed affection, but no immoral intimacy, toward Mr. McAllister. In view of the child's tender years and the mother's discretion, we do not think that the court abused its discretion in concluding that the mother's conduct did not threaten the moral, emotional or mental health of the child for the present or the foreseeable future.

The petitioner argues that his former wife has not been discreet about this relationship, that indeed the relationship was open and notorious, in contravention of our fornication statute (Ill. Rev. Stat. 1979, ch. 38, par. 11—8). To establish this, he questioned three witnesses concerning the knowledge of the community, a small town of 3,000, concerning the relationship between Mrs. Olson and Mr. McAllister. An objection to the question on hearsay grounds was sustained, and the petitioner was allowed to ask the questions on offers of proof. The answer of one witness to this question was clearly inadmissible as improper rebuttal. That ground for objection was properly stated by the respondent and properly sustained. The second witness was not helpful to the petitioner. He testified that he knew that Mrs. Olson and Mr. McAllister were "going together and are seen in public together" but that he had never heard anything more about the nature or extent of their relationship. The third witness, an offer of proof, testified that she had "heard things about the nature of their sexual relations" and that it "appears to be" common knowledge.

■■ The evidence was properly excluded as irrelevant. The fornication statute, the violation of which was made relevant to child-custody matters by our supreme court in *Jarrett v. Jarrett*, requires that the cohabitation or intercourse be "open and notorious." Mere notoriety is not enough. Moreoever, notoriety is not an independent issue. The notoriety of the behavior must be a result of its openness. "The open and notorious limitation on the [fornication statute's] prohibitions reflects both a disinclination to criminalize purely private relationships and a recognition that open fornication represents a graver threat to public morality than private violations. Conduct of that nature, when it is open, not only violates the

statutorily expressed moral standards of the State, but also encourages others to violate those standards, and debases public morality." (*Jarrett v. Jarrett* (1979), 78 Ill. 2d 337, 346, 400 N.E.2d 421.) If, through no indiscretion of the accused, his or her illicit sexual activity nevertheless becomes a matter of public knowledge, he cannot be said to be violating the public policy prohibiting the flaunting of the illicit relationship. " 'It is the publicity of the offense, the demoralizing and debasing influence of the example, that the law attempts to prevent.' " (*People v. Potter* (1943), 319 Ill. App. 409, 414, 49 N.E.2d 307.) Thus, to be relevant, the evidence must be based upon the words or actions of the accused. Mere reputation is not admissible unless first offered in defense of the charge.

There is some evidence that Mr. McAllister "bragged" about his sexual relationship with Mrs. Olson. However, his behavior will not be attributable to Mrs. Olson. As the court below stated, "[T]he relationship was perhaps only open to those who made particular point of noticing the location of the Buick and pickup or the illumination of the residences." The evidence indicates a complete absence, on Mrs. Olson's part, of the type of open behavior found in *Jarrett v. Jarrett* and *People v. Potter* (1943), 319 Ill. App. 409, 49 N.E.2d 307.

The petitioner further claims that his child is ill-fed, neglected and unhappy, that the child is made to stay up late while his mother visits her lover, and that the child spends too much time at the babysitter. We have carefully examined the record and find that the evidence of most of these assertions is insubstantial, ambiguous, or trivial. It is, however, undisputed that the respondent now works 35 hours per week and that, as a result, Jonathan is cared for during those hours by a babysitter. It is also undisputed that Mr. Olson is a good father, and, as a result of his employment as a farmer, he has a great deal of leisure time to spend with his son. He concedes, however, that his work also requires that he spend some time away from his son. The court, therefore, did not err in finding that the physical, mental, moral, and emotional health of Jonathan was not seriously endangered by the child's present environment. Ill. Rev. Stat. 1979, ch. 40, par. 610(b)(3).

The petitioner next contends that periodic maintenance should be terminated because Mrs. Olson "cohabits with another person on a resident, continuing conjugal basis" (Ill. Rev. Stat. 1979, ch. 40, par. 510(b)). "Section 510(b) * * * is mandatory and flatly states that the obligation to pay maintenance 'is terminated' by the 'resident, continuing conjugal' cohabitation of the recipient with another person." (*In re Marriage of McGowan* (1980), 84 Ill. App. 3d 609, 614, 405 N.E.2d 1156.) "[T]he termination of maintenance upon the recipient's resident, continuing and conjugal cohabitation with another person was most likely added to section 510(b) to end the inequities caused when a former spouse had in

fact entered into a husband-wife relationship, although not formalized legally, and was still entitled to maintenance merely because Illinois does not recognize common law marriages." (*In re Marriage of McGowan* (1980), 84 Ill. App. 3d 609, 614, 405 N.E.2d 1156.) "Moreover, the legislative intent does not appear to be an attempt to control public morals. [Citation.] Rather, an important consideration, divorced from the morality of the conduct, is whether the cohabitation has materially affected the recipient spouse's need for support because she either received support from her co-resident or used maintenance monies to support him." (*In re Marriage of Bramson* (1980), 83 Ill. App. 3d 657, 663, 404 N.E.2d 469.) Accordingly, " 'lesser involvement' by the person receiving maintenance should not require termination of maintenance." *In re Marriage of Bramson* (1980), 83 Ill. App. 3d 657, 662, 404 N.E.2d 469.

■■■ In addition to the facts already set forth, the evidence indicated, and the trial court found, that Mrs. Olson and Mr. McAllister have maintained separate residences and have not commingled or shared any property during the period of their relationship. (See *In re Marriage of Bramson* (1980), 83 Ill. App. 3d 657, 663, 404 N.E.2d 469.) The court concluded, "While the relationship of Mrs. Olson and Mr. McAllister has certain characteristics of a marital relationship, the relationship is far from that of husband and wife. It more closely resembles a courting or dating relationship. The court is unable to find from the evidence proof of a resident and continuing, conjugal relationship." Whether the party receiving maintenance cohabits with another person on a resident, continuing conjugal basis is a factual determination. (*Schoenhard v. Schoenhard* (1979), 74 Ill. App. 3d 296, 301, 392 N.E.2d 764.) The court's determination was not contrary to the evidence.

Finally, the petitioner contends that maintenance should have been terminated because of other changed circumstances. (Ill. Rev. Stat. 1979, ch. 40, par. 510(a).) The petition for modification recites from the findings of the court in its judgment for dissolution of marriage:

> "That respondent lacks sufficient property to currently provide for her reasonable needs, being currently unemployed, having been out of the job market since her graduation from A.I.C., and being the custodian of a child whose age makes it appropriate that she not be immediately required to obtain full-time employment outside her home."

In its order denying the petition for modification, the court dealt with the prayer to terminate maintenance as if it were based on only two grounds. The first, compulsory termination under section 510(b) for cohabitation with another on a resident, continuing conjugal basis has already been discussed. The other ground for termination of maintenance was predicated upon a change of custody. If the mother was no longer "the

custodian of a child whose age made it appropriate that she not be immediately required to obtain full-time employment outside her home," she would no longer be in need of maintenance. Because custody was not changed, the court declined to comment upon this ground for modifying maintenance. The petitioner argues, for the first time on appeal, that maintenance should have been terminated because his former wife is now employed "full time outside the home and is earning substantial wages for her own support." This recitation appears in the modification petition. Evidence was introduced showing that Mrs. Olson is employed 35 hours per week, and that her rate of pay is $3.25 per hour. It was further brought out, in a statement by Mrs. Olson's counsel in his argument for attorney's fees, that Mrs. Olson has $2,000 in savings. However, petitioner made no effort to demonstrate to the trial court that a change had occurred which substantially affected the needs of the parties and the respective abilities of the parties to meet those needs. (Ill. Rev. Stat. 1979, ch. 40, pars. 510(a), 504(b)(1), (2).) " 'The burden is upon the moving party to show such circumstances as would require modification.' " (*Bulmer v. Bulmer* (1975), 28 Ill. App. 3d 406, 409, 328 N.E.2d 622.) The petitioner has failed to meet this burden. The evidence and argument concerning respondent's ability to meet her own needs were so deficient that the court did not see fit to comment upon them. Our independent examination of the evidence leads us to the conclusion that the court's lack of comment was not an oversight. The issue was not properly raised below. Moreover, the bare facts that Mrs. Olson worked for three months prior to the hearing, earning $113.75 per week ($93 net) and had $2,000 in savings, six months after receiving a $6,000 lump-sum settlement from her ex-husband, do not meet petitioner's burden of proving, by a preponderance of the evidence, a "substantial change in circumstances" such as would require a termination of maintenance. Ill. Rev. Stat. 1979, ch. 40, par. 510(a).

Accordingly, the judgment of the Circuit Court of Mercer County is hereby affirmed.

Affirmed.

BARRY and HEIPLE, JJ., concur.