*In re* MARRIAGE OF HULBERT GREENBERG, Petitioner-Appellant, and JEAN GREENBERG, Respondent-Appellee.

First District (1st Division)    Nos. 81-240, 81-348 cons.

Opinion filed December 21, 1981.

Douglas Polsky and Harvey Sussman, both of Chicago, for appellant.

Kirsh & Berman, Ltd., of Chicago, for appellee.

JUSTICE GOLDBERG delivered the opinion of the court:

Hulbert Greenberg (petitioner) and Jean Greenberg (respondent) were married on June 14, 1953. They had two children, Ilene, age 22, and Julie, age 20, at the time of trial. Petitioner sued for dissolution of the marriage on December 14, 1977. After a hearing on May 21, 1980, the trial court awarded respondent temporary maintenance and attorneys fees. On June 17, 1980, the trial court granted a dissolution of the marriage on the grounds of mental cruelty after an uncontested prove-up (see Ill. Rev. Stat. 1979, ch. 40, par. 401(2)). After trial, marital assets were divided by the court in an order dated December 9, 1980. Subsequent hearings were held on the issue of attorneys fees resulting in an order entered March 13, 1981. Petitioner has appealed from all monetary decisions by the trial court.

I

*Temporary Maintenance*

Petitioner is self-employed in the practice of optometry. His income tax returns for 1977, 1978, and 1979, showed gross annual income of $30,295, $36,977, and $41,870 respectively. During 1979, petitioner contributed $4,802 toward his own Keogh retirement plan and purchased an automobile for approximately $9,000. Part of the automobile purchase price came from insurance funds.

Petitioner was then currently residing in the marital home in Flossmoor, Illinois. He noted his affidavit indicated a monthly net income of $2,200. Petitioner also testified to detailed expenditures for college edu-

cation of his daughters. These expenditures were paid out of monthly income, savings, and proceeds from the sale of approximately $10,000 of bonds. Petitioner was aware that both daughters have their own savings accounts.

Respondent testified her affidavit of expenses listed "estimated" rental payments of $500 per month although her actual rent was then currently $150 per month. Similarly, her "estimated" utility expenditure was listed in her affidavit as $150 per month, whereas she currently paid nothing for utilities. Respondent testified these estimated expenses were those she expected to be paying in the near future when she moved into a new apartment. She stated she was then currently residing in the apartment of a friend's mother, but would soon have to move out. Respondent also testified she was sending $25 per month to each of her daughters. She also incurred personal expenditures of $200 per month for entertainment and $150 per month for clothing.

Respondent testified she is currently employed as a legal secretary at a gross salary of $275 per week. Her income was in excess of her expenses, allowing her to save $1,500. She owned stock, given her by her mother, valued at approximately $15,700. The dividends from these stocks went to help support her mother. Respondent stated she had also recently sent $250 to her younger daughter. The trial court allowed respondent $110 per week as temporary maintenance.

Petitioner notes the discrepancy between respondent's "estimated" and actual expenses and points out she has been able to save portions of her salary. Petitioner contends this ability to save money, combined with her "stock portfolio," establish respondent was financially capable of supporting herself.

Section 501(a)(1) of the Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, par. 501(a)(1)) specifically permits a moving party to receive temporary maintenance. In *Bellow v. Bellow* (1979), 72 Ill. App. 3d 608, 610, 391 N.E.2d 29, this court stated "[a] temporary support order is primarily within the sound discretion of the trial court and, absent an abuse of discretion, this court will not reverse such an order." The trial courts have "wide latitude" in this regard. See *In re Marriage of Simmons* (1980), 87 Ill. App. 3d 651, 657, 409 N.E.2d 321.

■■ We cannot say the instant award was an abuse of discretion. Although respondent was neither destitute nor unemployed, she was clearly living at a standard far below that which she enjoyed during her marriage. (See *In re Marriage of Brenner* (1981), 95 Ill. App. 3d 100, 102-03, 419 N.E.2d 400.) Her earnings are far less than those of petitioner. Generally, "the manner in which the parties have been accustomed to live" should be considered as regards maintenance. (*In re Marriage of Parello* (1980), 87

Ill. App. 3d 926, 934, 409 N.E.2d 461.) The trial court described the maintenance award as 20% of petitioner's net monthly earnings.

■■ We find no discrepancy between respondent's actual and projected expenses which demonstrates an abuse of discretion by the trial judge. The fact that respondent's affidavit detailed projected and not actual expenses was adequately brought to the attention of the trial judge, as was respondent's contention that these estimated expenses would shortly become actual expenditures. Thus, this factor became a question of credibility which the trial judge was in the best position to determine. In addition, the ownership of stocks by respondent does not establish her as financially independent. Respondent should not be required to divest herself of assets or impair her capital in order to maintain herself. (*In re Marriage of Thornton* (1980), 89 Ill. App. 3d 1078, 1088, 412 N.E.2d 1336.) We therefore conclude the temporary maintenance award was not an abuse of discretion.

## II
### Temporary Attorneys Fees

Section 508(a) of the Act (Ill. Rev. Stat. 1979, ch. 40, par. 508(a)) provides:

> "The court from time to time, after due notice and hearing, and after considering the financial resources of the parties, may order either spouse to pay a reasonable amount for his own costs and attorney's fees and for the costs and attorney's fees necessarily incurred by the other spouse, * * *."

After respondent had been awarded temporary maintenance during the hearing of May 21, 1980, counsel for respondent orally requested an order for temporary attorneys fees. No petition for fees had been filed, but counsel for respondent stated he had performed approximately 20 hours of work and had been paid only costs. Counsel for petitioner argued such request was premature. The trial court awarded counsel for respondent $1,000 as temporary fees.

■■ In our opinion this allowance was an abuse of discretion by the trial court. Although the award was made after the trial court had heard evidence as to the financial status of the parties, no petition stating the detailed services performed and the amount of fees claimed was ever presented to the trial court by counsel for respondent. This court has held that "the granting of attorney's fees is improper where no evidence is heard as to the items of service performed, or as to the basis of the amount requested or as to the reasonableness of the fees for such services." (*In re Marriage of Brophy* (1981), 96 Ill. App. 3d 1108, 1120, 421 N.E.2d 1308.) The order for temporary attorneys fees is therefore vacated.

## III
### *Marital Property*

The marital property is:

A. The home in Flossmoor valued at $110,000 with mortgage of approximately $19,000.

B. Petitioner's automobile valued at about $9,000 and respondent's car about $3,800.

C. Deposits by petitioner in a retirement plan, approximately $24,000.

D. In possession of respondent, $3,000.

E. Petitioner's savings account, $228, and respondent's savings account, $1,600.

F. Petitioner's optometry business, unvalued.

G. Furniture and furnishings, some retained in the home, others removed therefrom by respondent, and others sold by petitioner.

The judgment gave respondent 75% of the net value of the house being about $68,250; $5,000 for furniture remaining in the house or unilaterally sold by petitioner; $6,500 being about one-half of the proceeds of liquidation of stocks and bonds by petitioner; $3,000 being marital property held by respondent (item D above); respondent's car valued at $3,800; and $1,600 being respondent's savings account (item E above). Certain savings and securities which respondent had obtained from her mother were treated as respondent's own property and not as marital property. See Ill. Rev. Stat. 1979, ch. 40, par. 503(a)(1).

The judgment gave petitioner 25% of the net value of the marital home being about $22,750 and all furnishings remaining therein; his car; his savings account (item E above); his entire interest in the retirement plan; and his optometric practice.

The extended trial on distribution of property presents a devastating example of the futility of litigation of this type which is begun and conducted in a mutual spirit of hatred and revenge. The record is a maze of factual contradictions by both parties. The parties could agree only on the value of the marital residence. Virtually each and every other asset was the subject of bitter charges and countercharges.

For example, petitioner accused respondent of removing marital funds from a joint account for purchase of a cashier's check in order to hide them from both petitioner and the Internal Revenue Service. Respondent countercharged petitioner had opened an undisclosed personal bank account with marital funds taken from this same joint account. Petitioner charged respondent with dissipating marital funds on adulterous affairs. Respondent, on the other hand, charged petitioner with selling jointly held stocks and bonds without her permission and failing to

account for the proceeds. Petitioner was also accused of securing an automobile being used by respondent and later selling it for scrap.

Petitioner charged respondent cleared the marital residence of all furnishings of any value with the help of a moving van. Respondent countered that petitioner wilfully sold certain items of furniture respondent had specifically requested. Respondent also accused petitioner of secretive bookkeeping practices with respect to his business income in addition to secreting funds allegedly contributed to petitioner's retirement plan. Petitioner charged respondent with taking improper tax deductions for real estate tax payments made by petitioner.

In this situation the task of the trier of fact was painfully difficult as is the decision by this court. It is sufficient to say that no human agency could possibly or will ever arrive at the total truth. With this type of a record before us we cannot say that the results reached by the trial court are contrary to the manifest weight of the evidence.

The pertinent statute gives the trial court 10 separate guidelines which are listed as relevant factors to accomplish a fair division of the marital property "without regard to marital misconduct * * *." (Ill. Rev. Stat. 1979, ch. 40, par. 503(c).) Reviewing courts which have considered this problem classify the matter as one within the sound discretion of the trial court. (*In re Marriage of Smith* (1980), 90 Ill. App. 3d 168, 171, 412 N.E.2d 985, and cases there cited.) One pertinent case makes the sage observation that "if reasonable men could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion." *In re Marriage of Lee* (1979), 78 Ill. App. 3d 1123, 1127, 398 N.E.2d 126.

It is virtually impossible for this court to state all of the pertinent facts with any semblance of accuracy. As shown, the testimony is not only divergent but actually conflicting. We can best approach the problem by a consideration of the contentions made by counsel for petitioner as to why the judgment reflects a breach of discretion. The argument is first made that the trial court emphasized alleged dissipation of marital assets by petitioner (see Ill. Rev. Stat. 1979, ch. 40, par. 503(c)(1)), by failing to consider dissipation of assets by respondent. This argument overlooks the legal maxim that the trier of fact who saw and heard the witnesses is in a superior position to evaluate credibility.

Generally speaking, there is ample evidence in the record to support the results reached by the trial judge as to dissipation of assets by petitioner in connection with sale of jointly held securities without completely accounting for proceeds of sale, and disposing of home furniture and the marital automobile of respondent. As regards the conduct of respondent the record only indicates a vague usage of unspecified marital assets for a "nonfamily purpose." In addition, there is unassailed evidence that

respondent contributed significantly to the purchase price of the marital home. Respondent made half of the down payment for the home purchase by sale of bonds given to her by her mother. The other half came from the sale of a duplex apartment owned by the parties.

It must also be remembered that the evidence is clear that respondent was active as a homemaker through the entire period of 27 years during which the marriage existed. Ill. Rev. Stat. 1979, ch. 40, par. 503(c)(1), par. 503(c)(3).

Petitioner urges the trial court failed to consider the value of the property set apart to each spouse with reference to household furniture, automobiles and petitioner's optometry business. Regarding household furniture, the record does not show any specific offer of proof by either party as to the value of any of these items. The trial court did hear testimony regarding the value of the automobiles. Petitioner testified he purchased his automobile in 1979 for $9,000. Respondent testified she purchased her car for $3,800. She did not know its exact value as of the date she testified. This evidence of valuation was sufficient for the purposes before the trial court.

■■ As regards petitioner's optometry practice, there is testimony by petitioner that the business "had no value." This situation is one in which the worth of the business and its future earnings will be determined largely by the contributions and services made by petitioner. Any attempt at placing an exact value upon this asset would be completely arbitrary and therefore utterly futile. We will add that the evidence shows respondent's gross income was reflected in her 1979 income tax return as approximately $16,000. Respondent is presently employed as a legal secretary. By way of contrast, as above shown, petitioner's gross income for 1979 was $41,870.

The situation is best summarized by the statement that there are instances in which it is essential for purposes of complete fairness that a definite valuation be assigned to certain marital property. (See *In re Marriage of Hellwig* (1981), 100 Ill. App. 3d 452, 459-60, 426 N.E.2d 1087; and *In re Marriage of Rothbardt* (1981), 99 Ill. App. 3d 561, 565, 425 N.E.2d 1146.) The optometry business does not, in our opinion, come within this category.

■■ It is our considered conclusion that the trial judge was fully aware of the requirements of the statutory guidelines and that he did his best to make a fair and reasonable apportionment of the marital property. As closely as we can calculate, the total amount of marital property here involved is about $144,000. Respondent received about 61 to 62% and petitioner about 38 to 39% plus the optometry business. We cannot conclude that this disposition of marital assets was an abuse of discretion.

In addition, the fact that the trial court awarded respondent more

than half of the property does not make the division unfair. "[A]n equitable division of marital property is not necessarily an equal one." (*In re Marriage of Lloyd* (1980), 81 Ill. App. 3d 311, 312, 401 N.E.2d 328. See also *In re Marriage of Aschwanden* (1980), 82 Ill. 2d 31, 37, 411 N.E.2d 238.) In this regard the judgment is affirmed.

## IV
### *"Permanent" Maintenance*

Petitioner next argues the trial court improperly granted respondent $100 per week for two years as maintenance. (Ill. Rev. Stat. 1979, ch. 40, par. 504.) Petitioner notes the statutory requirement that allowance of maintenance is proper only if the wife lacks sufficient economic resources of her own. Petitioner contends respondent is both employed and in possession of significant assets.

We find no abuse of discretion in the award of maintenance by the trial court. Although petitioner is correct in noting that respondent is neither destitute nor unemployed, the Act also requires the court in awarding maintenance to consider the duration of the marriage and the standard of living established during the marriage. (See Ill. Rev. Stat. 1979, ch. 40, pars. 504(b)(3), 504(b)(4).) As above noted, these parties were married for 27 years. Respondent enjoyed a higher standard of living than that now available to her. Respondent's salary is far inferior to that of petitioner, as is her opportunity to generate a significantly larger future income. While respondent does possess capital assets worth approximately $33,000, aside from division of marital property, this court has held a party need not be required to consume these assets before being entitled to maintenance which will enable her to enjoy the standard of living established during the marriage. *In re Marriage of Thornton* (1980), 89 Ill. App. 3d 1078, 1088.

We also cannot accept petitioner's contention that the trial court failed to consider petitioner's ability to maintain himself in awarding maintenance. As above noted, petitioner's 1979 tax return showed gross income of $41,870 from his business. Payment of the $100 per week maintenance ($5,200 per year) leaves a significant sum available to petitioner. It is also significant to note this maintenance award is for only two years. If, during that period, petitioner is unable to meet his own needs, he may move the trial court to modify this decree. See Ill. Rev. Stat. 1979, ch. 40, par. 510(a).

■■ Accordingly, we conclude the award of maintenance was not against the manifest weight of the evidence and did not demonstrate an abuse of discretion by the trial court. *In re Marriage of Asch* (1981), 100 Ill. App. 3d 293, 296, 426 N.E.2d 1066.

The award of maintenance is therefore affirmed. See *In re Marriage of Lloyd* (1980), 81 Ill. App. 3d 311, 313.

## V
### Educational Expenses

Petitioner next argues the trial court erred in ordering him to continue to pay support and educational expenses for their youngest daughter, Julie. Petitioner contends the trial court failed to consider his financial position after the disposition of marital property in relation to that of respondent and Julie herself.

The statutory provision dealing with support for nonminor children and educational expenses states (Ill. Rev. Stat. 1979, ch. 40, par. 513):

> "The Court also may make such provision for the education and maintenance of the child or children, whether of minor or majority age, out of the property of either or both of its parents as equity may require, whether application is made therefor before or after such child has, or children have, attained majority age. In making such awards, the court shall consider all relevant factors which shall appear reasonable and necessary, including:
>
> (a) The financial resources of both parents.
>
> (b) The standard of living the child would have enjoyed had the marriage not been dissolved.
>
> (c) The financial resources of the child."

■■ We find no error in the decision of the trial court. As noted in detail above, the evidence before the court clearly established petitioner to be in a superior financial position than either respondent or Julie. (See *In re Marriage of Edelstein* (1980), 82 Ill. App. 3d 574, 577, 403 N.E.2d 323, *appeal denied* (1980), 81 Ill. 2d 591.) We believe that, as directed by this statute, the trial court properly considered the standard of living which Julie would have enjoyed had the marriage not been dissolved. It is apparent Julie owned some income-producing securities, apparently a gift from her grandmother. The precise value of these stocks is shrouded in doubt. As nearly as can be ascertained, the stock held for Julie is valued at approximately $13,000. In our opinion, the testimony at trial established Julie's financial position was inadequate to permit her to complete her education without assistance. The record does not support petitioner's contentions that he is unable to meet his daughter's final educational expenses.

■■ Petitioner also urges this court to consider the question of whether or not Julie is entitled to support under section 513 (Ill. Rev. Stat. 1979, ch. 40, par. 513) because she is emancipated and, as petitioner suggests, is residing with an unmarried friend. The fact that a child may be eman-

cipated does not preclude the court from ordering the payment of educational expenses. (See *In re Marriage of Taylor* (1980), 89 Ill. App. 3d 278, 282-83, 411 N.E.2d 950.) We decline to consider petitioner's contention regarding Julie's private life. First, these alleged facts were never brought before the trial court prior to its judgment, but were first raised in enforcement proceedings several months later. We also find Julie's living situation completely irrelevant to the issues at bar. The cases cited by petitioner (*Jarrett v. Jarrett* (1979), 78 Ill. 2d 337, 400 N.E.2d 421, *cert. denied* (1980), 449 U.S. 927, 66 L. Ed. 2d 155, 101 S. Ct. 329 and *Gross v. Gross* (1974), 23 Ill. App. 3d 228, 318 N.E.2d 659, *appeal denied* (1975), 57 Ill. 2d 607), have no relation to nonminor child support and educational expenses under section 513 of the Act (Ill. Rev. Stat. 1979, ch. 40, par. 513). This argument is therefore rejected.

## VI
### Attorneys Fees

Petitioner next contends the trial court erred in awarding attorneys fees on behalf of respondent. Petitioner contends the court failed to consider the necessary statutory factors, so that its order was an abuse of discretion and contrary to the manifest weight of the evidence. Petitioner further argues the trial court lacked jurisdiction over the question of attorneys fees, because the hearing was held subsequent to the filing of petitioner's notice of appeal from the December 9, 1980, judgment.

■■ This issue is not properly before us. Petitioner has presented a copy of an alleged report of proceedings on the issue of attorneys fees as an appendix to his brief. This copy is not certified by the trial court. There is no stipulation regarding authenticity of this document. The original of this document has never been filed in the trial court or this court. Thus, there is no compliance with Supreme Court Rule 323 (73 Ill. 2d R. 323). Petitioner has therefore "waived all points that can be reviewed only by a consideration of what actually transpired at the hearing. * * * Under such circumstances, it has been held that a reviewing court must presume that the trial court acted in conformity with the law and properly exercised its discretion." (*Washington v. Clayter* (1980), 91 Ill. App. 3d 489, 495, 414 N.E.2d 1085.) Additionally, as will be shown, at trial the parties expressly and by agreement reserved the issue of attorneys fees for later hearing.

## VII
### Accord and Satisfaction

In a rather unusual argument, petitioner next contends the trial court improperly "lent his good offices to the parties and thereby effected an oral settlement agreement." Petitioner contends this settlement provided for an uncontested prove-up of grounds for dissolution and a property

settlement. Petitioner then states the trial court improperly allowed respondent to repudiate the terms of the settlement after the prove-up on the grounds of mental cruelty. Petitioner contends the trial court assisted in the settlement negotiations and deliberately held proceedings off the record. Petitioner argues this action tainted the entire proceedings and justifies a remand of this case. Petitioner further argues he is entitled to accord and satisfaction of the proposed settlement agreement which the respondent was improperly allowed to repudiate.

Respondent contends there was no assistance by the trial judge in any manner in connection with settlement negotiations. Respondent urges the parties had reached a tentative settlement prior to the uncontested prove-up of June 17, 1980, but petitioner later repudiated its terms thus forcing a contested trial. Respondent further contends no settlement was ever reached, thereby negating any request for accord and satisfaction.

The review of this court is limited to the record before us. The record does establish that on June 17, 1980, prior to prove-up of dissolution, counsel for petitioner informed the trial court the parties intended to propose a written settlement agreement to the court. The prove-up on the grounds of mental cruelty was completed. The record further shows that on September 2, 1980, counsel for petitioner requested the trial court to vacate the prove-up of dissolution and proceed anew on different grounds. Counsel for petitioner conceded absence of fraud in the prove-up. The trial court denied the motion and proceeded with the hearing on the property issues.

We see little merit in petitioner's contentions. While settlement negotiations between the parties may have fallen through between the hearings described above, we find no fault in the trial court's refusal to rehear the prove-up on other grounds. As noted by the trial court, precisely which grounds are proved is immaterial. The Act prescribes property distribution to be accomplished without regard to marital misconduct. See Ill. Rev. Stat. 1979, ch. 40, par. 503(c).

Our review of the record does not support petitioner's allegations of judicial misconduct with respect to settlement negotiations. We find no evidence that the trial court interceded in any manner in any negotiations. We also note the record does not contain any evidence as to the terms of any alleged settlement agreement. The record contains no copy of any actual or proposed settlement agreement. We therefore reject this contention of petitioner.

## VIII
### Failure To Dispose of All Material Issues

Petitioner's final contention is the trial court erred in entering a final judgment with respect to the dissolution and financial issues while failing

to dispose of all of remaining material issues. Petitioner notes the judgment failed to dispose of his cross-petition for legal separation (which had been consolidated into the instant action), the third count of his petition for dissolution which is an action against a third party for alienation of affections and the issue of final attorney fees. Such failure, urges petitioner, mandates reversal of the judgment.

We do not believe these issues are before us. Petitioner did not raise any of these matters in his post-trial motion or his notice of appeal. The issues are therefore waived.

In addition, the issue of attorney fees was expressly reserved for further hearing by agreement in open court by counsel for petitioner in the proceedings on June 17, 1980, on the grounds for dissolution of the marriage. The issue of legal separation is not viable at this time because of the previous entry of the judgment for dissolution of the marriage which has already accomplished a complete legal separation of these parties. The action for alienation of affections presumably may proceed at any time desired by petitioner. This problem has no relationship to or bearing upon the issues between petitioner and respondent. We note also that the judgment order appealed from contains the finding by the trial court required in Rule 304(a) (73 Ill. 2d R. 304(a)).

The order granting respondent temporary attorney fees is therefore reversed. In all other matters the judgment appealed from is affirmed.

Affirmed in part; reversed in part.

McGLOON and O'CONNOR, JJ., concur.