Sandra JACOBSON, Plaintiff
and Appellee,

v.

Duane JACOBSON, Defendant
and Appellant.

Civ. No. 10011.

Supreme Court of North Dakota.

Dec. 30, 1981.

Carma Christensen, Bismarck, for plaintiff and appellee.

Daniel J. Chapman, of Chapman & Chapman, Bismarck, for defendant and appellant.

VANDE WALLE, Justice.

Duane Jacobson appealed from a judgment of divorce entered by the district court of Burleigh County. We affirm in part and reverse in part and remand with directions to enter an order awarding custody of the minor children to Duane.

Sandra and Duane were married in 1966. Two children were born of the union, i.e., T. K., born January 11, 1972, and J. A., born October 12, 1977. Sandra commenced divorce proceedings on or about April 1, 1980, and the couple lived apart from that time. Temporary custody was placed with Sandra, age 33 at time of trial, under an interim order of the trial court. Duane filed an answer containing a general denial and specifically requested custody of the children by way of an amended answer. After trial the trial court issued its findings of fact, conclusions of law, and order for judgment. The trial court determined that irreconcila-

ble differences existed and granted Sandra an absolute decree of divorce from Duane. The trial court further determined that the best interests of the children required that Sandra be given custody. The trial court made additional determinations which are not at issue here. After judgment was entered, Duane appealed. The only issue on appeal is that the trial court erred in awarding custody of the children to Sandra rather than to Duane. Within that issue the parties present several factors in an attempt to sway this court to their respective positions. However, it is clear that the burning issue in this appeal is Sandra's sexual preference. She freely admits to a homosexual relationship with a person named Sue who was 18 years of age at the time of trial. After determining the facts the trial judge indicated there were two areas of concern:

"a. will the children suffer from the 'slings and arrows' of a disapproving society; and

"b. if the custodial parent is homosexual or bisexual is the likelihood increased that the child will become" [sic]

The trial judge peremptorily disposed of the first issue, finding that in this particular factual situation "the first question [is] not of great importance as the children will be required to deal with the problem regardless of which parent has custody; . . ."

With respect to the second concern the trial judge determined that the factor of "role model" is one of natural concern and a proper subject of inquiry. Noting that Sandra's counsel quoted from various sources in her brief the trial judge stated he was disregarding the information as the sources were not available for cross-examination. The trial judge indicated he did extensive research into available case law and determined that the cases appeared to divide

themselves into two categories, i.e., "those in which courts, without explaining the reasons for their conclusions, determine that homosexuality is a factor to be considered in awarding custody; those in which, based upon expert testimony, the courts conclude that the subject is irrelevant. The Court therefore finds that the sexual preference issue can only be a factor if the evidence provides some method of weighing that factor with the other factors that cumulatively make up the 'best interests' equation; . . ."

The trial judge then found:

"That the Plaintiff is fit, willing and able to assume the custodial role; the Defendant is likewise fit, willing and able to assume the custodial role. It cannot be determined that the children will clearly be better off with one parent than the other; there would, however, be less disruption if the children were to remain with the Plaintiff, from the standpoint of schooling and from the standpoint of avoiding a change in the parent with whom the children have spent most of their home and have received most of their day to day upbringing."

A review of the district court's memorandum opinion reflects that the trial judge did, indeed, review the several cases which have dealt with this matter. Counsel for both Sandra and Duane, in their briefs on appeal, have also cited for our consideration many cases which are concerned with this issue.

Section 14–09–06.2, N.D.C.C., provides that the best interests and welfare of the child should be considered by the trial court in determining which parent in a divorce proceeding should have custody of the children. Evaluation of all factors affecting the best interests and welfare of the child is to be made, and the statute contains a list of those factors to be considered, when applicable.[1] We have stated on many

---

1. Section 14–09–06.2, N.D.C.C., provides:

"For the purpose of custody, the best interests and welfare of the child shall be determined by the court's consideration and evaluation of all factors affecting the best interests and welfare of the child. These factors include all of the following when applicable:

"1. The love, affection, and other emotional ties existing between the parents and child.

"2. The capacity and disposition of the parents to give the child love, affection, and

occasions that in reviewing the trial court's determination of child custody in a divorce action, we treat these matters as findings of fact which, on appeal, are subject to the standard of review prescribed by Rule 52(a), N.D.R.Civ.P., i.e., that findings of fact are not to be set aside by this court unless we find them to be clearly erroneous. See, e.g., *Miller v. Miller*, 305 N.W.2d 666 (N.D.1981). We do not set aside a custody award unless we are left with a definite and firm conviction that a mistake has been made. *Gross v. Gross*, 287 N.W.2d 457 (N.D.1979). In this instance we are convinced that such a mistake has been made.

■ The portion of the trial judge's decision quoted above determines that both parents are "fit, willing and able to assume the custodial role." We need not determine whether one or the other parent is fit to have custody of the children; we need only determine that the children's best interests would be served by placing custody in one parent rather than the other parent. *Gross v. Gross, supra.*[2]

■ It is not inconceivable that one day our society will accept homosexuality as "normal." Certainly it is more accepted today than it was only a few years ago. We are not prepared to conclude, however, that it is not a significant factor to be considered in determining custody of children, at least in the context of the facts of this particular case. Because the trial court has determined that both parents are "fit, willing and able" to assume custody of the children we believe the homosexuality of Sandra is the overriding factor. Sandra admitted to a sexual relationship with Sue prior to the termination of the marriage. Although that relationship was adulterous as defined by Section 12.1–20–09, N.D.C.C., that fact alone does not influence us. Rather, it is the conceded fact that after the divorce Sandra and Sue would establish a relationship in which they would be living together which gives us concern. In paragraph 9 of its findings the trial court stated:

> "The Plaintiff [Sandra] has admitted a relationship with an adult woman [who] is likewise a strong, intelligent person; they have been discreet about their relationship; it is not outwardly apparent; thus far the children do not appear to be aware of it; the women intend to continue this relationship permanently and live together in the future; the relationship is a positive one; several people are aware of the relationship and it is clear that at

guidance and to continue the education of the child.

"3. The disposition of the parents to provide the child with food, clothing, medical care, or other remedial care recognized and permitted under the laws of this state in lieu of medical care, and other material needs.

"4. The length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity.

"5. The permanence, as a family unit, of the existing or proposed custodial home.

"6. The moral fitness of the parents.

"7. The mental and physical health of the parents.

"8. The home, school, and community record of the child.

"9. The reasonable preference of the child, if the court deems the child to be of sufficient intelligence, understanding, and experience to express a preference.

"10. Any other factors considered by the court to be relevant to a particular child custody dispute.

"In any proceeding under this chapter, the court, at any stage of the proceedings after final judgment, may make orders about what

security is to be given for the care, custody, and support of the unmarried minor children of the marriage as from the circumstances of the parties and the nature of the case is equitable."

2. In *Bezio v. Patenaude*, —— Mass. ——, 410 N.E.2d 1207 (1980), the Supreme Judicial Court of Massachusetts reversed a judgment denying the natural mother's petition to regain the custody of her children from a guardian and remanded the matter for further proceedings. In *Bezio* the court stated: "In the total absence of evidence suggesting a correlation between the mother's homosexuality and her fitness as a parent, we believe the judge's finding that a lesbian household would adversely affect the children to be without basis in the record." 410 N.E.2d at 1216. We note, however, that the issue in *Bezio* was the unfitness of the mother, i.e., in order to retain custody in a guardian the mother would have to be found unfit. Here, we are not concerned with the unfitness of Sandra, but rather the best interests of the children, accepting as fact that both Sandra and Duane are fit parents.

some point the children will become aware of it."

Our statutes do not prohibit sexual relations between adult persons who are not married to other persons. Although Section 12.1–20–10, N.D.C.C., makes it a crime for a person to live openly and notoriously with a person of the opposite sex as a married couple without being married to the other person, the statutes contain no such provision with regard to persons of the same sex. The reason is obvious—neither North Dakota nor any other State in this nation, insofar as we can determine, recognizes a legal sexual relationship between two persons of the same sex.[3] Thus, despite the fact that the trial court determined the relationship between Sandra and Sue to be a "positive one," it is a relationship which, under the existing state of the law, never can be a legal relationship. Whether or not it will remain a stable relationship is yet to be determined. Sue is considerably younger than Sandra.

In *Jarrett v. Jarrett*, 78 Ill.2d 337, 36 Ill.Dec. 1, 400 N.E.2d 421 (1979), *cert. denied*, 449 U.S. 927, 101 S.Ct. 329, 66 L.Ed.2d 155 (1980), the Illinois Supreme Court affirmed a judgment that the resident presence of the mother's paramour might adversely affect the moral and emotional health of three daughters, ages 12, 10, and 7. In *In re Marriage of Olson*, 98 Ill.App.3d 316, 53 Ill.Dec. 751, 424 N.E.2d 386 (1981), the Appellate Court of Illinois considered an appeal from a judgment refusing to change the custody of a minor child from the mother to the father because of the mother's sexual relationship with another man. In affirming the trial court's judgment, the Illinois Appellate Court distinguished *Jarrett* because in *Olson* the mother did not cohabit with her lover in the presence of the child. Here, although Sandra was not residing with Sue at the time of the hearing on custody, her intentions to do so in the future were plainly announced to the trial court, as evidenced by its findings, and, at the time of oral argument, we were informed that Sandra and Sue were in fact living together in the same residence in which the children reside. It is this particular fact which we believe to be material in this instance. Sandra's homosexuality may, indeed, be something which is beyond her control. However, living with another person of the same sex in a sexual relationship is not something beyond her control. It may be argued that to force her to dissolve her living relationship in order to retain custody of her children is too much to ask. However, we need no legal citation to note that concerned parents in many, many instances have made sacrifices of varying degrees for their children.

Furthermore, we cannot lightly dismiss the fact that living in the same house with their mother and her lover may well cause the children to "suffer from the slings and arrows of a disapproving society" to a much greater extent than would an arrangement wherein the children were placed in the custody of their father with visitation rights in the mother. Although we agree with the trial court that the children will be required to deal with the problem regardless of which parent has custody, it is apparent to us that requiring the children to live, day-to-day, in the same residence with the mother and her lover means that the children will have to confront the problem to a significantly greater degree than they would if living with their father. We agree with the trial court that we cannot determine whether or not the fact the custodial parent is homosexual or bisexual will result in an increased likelihood that the children will become homosexual or bisexual. There is insufficient expert testimony to make that determination.[4] How-

<hr>

3. See, e.g., *In re Adult Anonymous II*, Fam.Ct., 443 N.Y.S.2d 1008 (1981), in which that court refused to approve the adoption by one adult male homosexual of another adult homosexual who were "seeking to obtain some legal recognition of the bond that exists between them." In that case the court noted that "a statutory mechanism for conferring status on the relationship, with concomitant rights and obligations, is yet to be devised...."

4. A guardian ad litem for the children was appointed by the trial court "for purposes of making whatever investigation, and conducting

ever, that issue does not control our conclusion. Rather, we believe that because of the mores of today's society, because Sandra is engaged in a homosexual relationship in the home in which she resides with the children, and because of the lack of legal recognition of the status of a homosexual relationship, the best interests of the children will be better served by placing custody of the children with Duane.

The judgment of the district court is reversed insofar as it awards custody of the minor children to Sandra; in all other matters the judgment is affirmed.

ERICKSTAD, C. J., and PEDERSON, PAULSON and SAND, JJ.

whatever interviews that are necessary, to enable said Guardian to make a recommendation . . . as to the custodial arrangement that would be in the best interests of the minor children, . . ." Sec. 14–09–06.4, N.D.C.C.; Rule 4.1, N.D.R.O.C. In her report the guardian ad litem, a youth counselor with the office of the Juvenile Supervisor of Burleigh County, stated:

"Sandy's relationship with Sue does seem to play a part in this custody issue. I will be honest and say, I do not know how big a part it plays in 'the best interest of the child.' I know nothing to little on the subject of homosexuality. Because of this, I do not feel I can make a recommendation in this case."