**Lynette F. LAPP, Plaintiff and Appellant,**

v.

**Dale E. LAPP, Defendant and Appellee.**

**Civ. No. 10378.**

Supreme Court of North Dakota.

July 14, 1983.

Daniel J. Chapman (argued), of Chapman & Chapman, Bismarck, for plaintiff and appellant.

Marnell Ringsak (argued), William C. Severin, Bismarck, for defendant and appellee.

PAULSON, Justice.

This is an appeal by Lynette F. Lapp from an order that denied her motion requesting modification of a previous order granting Lynette F. Lapp and Dale E. Lapp divided custody of their daughter, Trina Lapp. We affirm.

Lynette and Dale have been before this court previously in a dispute involving the custody of their daughter. See *Lapp v. Lapp,* 293 N.W.2d 121 (N.D.1980), for a more complete discussion of the facts leading to the original custody determination.

Lynette and Dale were married in 1971 and divorced in 1979. They had one child, Trina, who was born in 1973. In Lynette's first appeal to this court, we affirmed the part of the trial court's judgment that granted Lynette and Dale divided custody on a six-month alternating basis with one weekend visitation per month granted to the noncustodial parent. *Lapp, supra* 293 N.W.2d at 128. We noted in *Lapp* that cooperation and the combined efforts of both parents are necessary to make a custody arrangement successful. *Lapp, supra* 293 N.W.2d at 131.

It has been three years since our first *Lapp* opinion, and Trina is now ten years old. It is Lynette's contention that circumstances have changed, justifying the modification of the previous custody order so that she has sole custody of Trina and Dale has reasonable visitation rights. Lynette alleged several incidents evidencing a change in circumstances that mandate a modification of custody,[1] however, most are only examples of the lack of cooperation between Lynette and Dale. Lynette's major contention showing a change of circumstances meriting a modification of the custody order is the fact that Dale admits that he has been living with a woman to whom he is not married while Trina is in his custody.[2] Lynette argues that this fact, along with the other circumstances she alleges, demonstrates a moral unfitness which justifies terminating Dale's right of custody.

After a hearing the trial judge issued his findings of fact and conclusions of law in a memorandum opinion. Although the findings and conclusions are commingled, the memorandum opinion is sufficient under Rule 52(a) of the North Dakota Rules of Civil Procedure. *Schmidt v. Schmidt,* 325 N.W.2d 230, 232 (N.D.1982). The trial judge, discussing Dale's living arrangement, determined:

"Whether Mr. Lapp's living arrangement (assuming it is carried on indefinitely) would have any detrimental effect upon the child is, of necessity, purely speculative. We may also speculate that changing the custody relationship might also adversely affect the child. I see no point in changing the custodial arrangement where there is no indication that it is adversely affecting the child and, on the contrary, all evidence indicates that the child is happy and well adjusted. I do not mean by this to suggest that an actual adverse effect must be demonstrated before a change of custody can ever be achieved. In this situation, however, in which the parents live in the same community and the child will see each regularly, regardless of the precise

1. Lynette alleges that Trina was unhappy, that Dale was involved in a shoplifting incident, that Dale did not make child support payments, that Dale did not take Trina to church, that Dale allowed Trina's hair to be cut without consulting Lynette, that Dale did not get necessary tutoring for Trina, and that Dale did not pay certain medical bills.

The trial judge responded to Lynette's allegations by stating the following in his memorandum opinion:

"The child, while living with her father, receives proper care and comfort, and the allegations regarding the 'unhappy' environment while with the father or paternal grandmother are not supported by evidence, nor do I find any evidence that Mr. Lapp was guilty of any misconduct with respect to the question of tutoring the child.

"I have considered the other complaints made about the father but make no comment on them, other than to observe that they do not relate to the question of custody.

"Love, affection, and other positive emotional ties exist between the child and each of her parents. Both parents have the capacity and disposition to give the child love, affection, and guidance, and to continue the education of the child. Both are disposed to provide the child with food, clothing, and medical care. The child's environment is stable and satisfactory."

2. Although verification of the fact was not included in the record, Dale's attorney stated during oral argument that Dale and his fiancee were married in May 1983.

terms of visitation and custody, I see no useful purpose in altering existing arrangements."

The judge then denied Lynette's motion for a modification of custody and she appealed.

■ In *Miller v. Miller,* 305 N.W.2d 666, 671 (N.D.1981), we stated that when a trial court considers a request to modify custody, it should determine

"(a) whether or not there has been a significant change of circumstances since the original divorce decree and custody award; and, if so, (b) whether or not those changed circumstances are such that the best interests of the child would be served by a change in custody."

The burden of showing a change of circumstances which affects the best interests of the child and requires a change in custody is on the party seeking modification, in this case Lynette. *See Miller, supra* 305 N.W.2d at 671.

Section 14–09–06.1 of the North Dakota Century Code states the important policy requiring that custody of a child be awarded to "promote the best interests and welfare of the child". Section 14–09–06.2, N.D. C.C., lists ten factors for a court to consider when it determines the best interests of the child. The factor that Lynette brings to our attention in this case and that we have stated can be considered by a court when it is awarding custody is the "moral fitness of the parents". *See Larson v. Larson,* 294 N.W.2d 616, 619 (N.D.1980).

It is Lynette's contention that, because Dale has been living with a woman to whom he is not married while Trina is in his custody, Dale is an immoral parent who should not have custody of his daughter. Lynette relies upon our opinion in *Jacobson v. Jacobson,* 314 N.W.2d 78 (N.D.1981), in which we reversed a district court order awarding custody to a mother living in an open homosexual relationship. *Jacobson* is distinguishable from the instant case because the fact that the mother was involved in a homosexual relationship in *Jacobson* was of major importance in our decision. *See Jacobson, supra* 314 N.W.2d at 82.

Lynette also relies upon an Illinois case we cited in *Jacobson, i.e., Jarrett v. Jarrett,* 78 Ill.2d 337, 36 Ill.Dec. 1, 400 N.E.2d 421 (1979), *cert. denied,* 449 U.S. 927, 101 S.Ct. 329, 66 L.Ed.2d 155 (1980). In *Jarrett* a majority of the Illinois Supreme Court modified a custody award at the father's request because of the mother's open and continuing cohabitation with her boyfriend. In *Jarrett* the mother testified that she did not want to remarry and that she had no plans to do so. The facts of the instant case are distinguishable as both Dale and his girlfriend testified during the hearing that they were engaged to be married.

An Illinois appellate court analyzed *Jarrett* in *Brandt v. Brandt,* 99 Ill.App.3d 1089, 55 Ill.Dec. 78, 425 N.E.2d 1251 (1981). In *Brandt* a father petitioned the court for a transfer of custody of two daughters from their mother, his ex-wife. The mother was living with a man to whom she was not married in an open and continuing heterosexual relationship.

In *Brandt, supra* 55 Ill.Dec. at 88–89, 425 N.E.2d at 1261–1262, the Illinois court considered the *Jarrett* decision and stated:

"It appears to us that the . . . language used by the supreme court in *Jarrett* indicates that a decision directing a change of custody must be buttressed on more than the fact that the custodial parent resides with a member of the opposite sex in an open and continuing cohabitation. A decision on the issue of custody includes the evaluation of the totality of the evidence submitted . . . . Thus, we necessarily conclude that the circumstances of 'living together' does not, *per se,* lead to the conclusion that the trial court must, for that reason alone, order a transfer of custody.

"The foregoing is not to say that the conduct of . . . [the mother] does not affront public morality, even if such conduct may no longer be seen as shocking or unusual in our contemporary society. . . . Nevertheless, the affront to public morality as practiced by . . . [the mother] was only an additional element to be considered by the trial court in

making its decision as to the best interests of the children and as to whom their custody should be awarded."

 We agree with the *Brandt* court's conclusion that the circumstance of "living together" alone does not mandate a transfer of custody. As always, the court's main priority is the best interests of the child involved. In the instant case the trial judge who considered Lynette's motion is the same judge who presided at Dale's and Lynette's divorce proceedings. He is familiar with all of the facts involved in the dissolution of this family and in its history since that time. *See Vetter v. Vetter,* 267 N.W.2d 790, 793 (N.D.1978). During the hearing on Lynette's motion, the judge heard testimony from Lynette, her parents, Dale, his mother, his fiancee, and others. The trial judge is better able to ascertain the facts because he can listen to and observe the demeanor of the witnesses. *Lapp, supra* 293 N.W.2d at 129.

The memorandum opinion issued by the trial judge indicates that he considered the troublesome aspects of this custody dispute. Nevertheless, the judge did not order a change in custody. We believe the evidence in the record supports the trial judge's order denying Lynette's motion for a change of custody. We are not left with a definite and firm conviction that a mistake has been made. Accordingly, we affirm.

ERICKSTAD, C.J., PEDERSON and SAND, JJ., concur.

VANDE WALLE, J., concurs in the result.