Sheryl R. LARSON, Plaintiff
and Appellant,

v.

Robert E. LARSON, Defendant
and Appellee.

Civ. No. 9711.

Supreme Court of North Dakota.

June 20, 1980.

McGee, Hankla, Backes & Wheeler, Minot, for plaintiff and appellant; argued by Donald L. Peterson, Minot.

Ella Van Berkom, Minot, for defendant and appellee.

ERICKSTAD, Chief Justice.

The plaintiff appeals from a judgment of divorce entered in Ward County District Court, Northwest Judicial District, on August 30, 1979. We affirm.

The plaintiff, Sheryl R. Larson, and the defendant, Robert E. Larson, were married in 1971. Two children were born of the marriage: Caeser Jonathan on May 12, 1972, and Genre Mackenzie Alexandra on August 11, 1976.

Sheryl commenced an action for divorce on March 27, 1978. By his amended answer and counterclaim, Robert sought to dismiss the complaint and obtain a divorce on the grounds of irreconcilable differences. He also asked, in pertinent part, to be awarded the care, custody, and control of the minor children. Since the parties separated in July of 1977, Robert has been living on the family farm near Minot, and Sheryl has resided in an apartment in Bismarck. The children have been moved back and forth

between the parties from the date of the separation until September of 1978. Since September of 1978, Robert has had primary custody of the two minor children and Sheryl has been afforded liberal visitation rights.

A hearing was commenced on February 21, 1979, and additional testimony was received on May 18, 1979. A memorandum opinion was issued by the district court on July 20, 1979. Findings of fact, conclusions of law, and order for judgment were executed on August.30, 1979, wherein the following relevant findings were made:

## "IV.

"That there are two (2) children born the issue of this marriage, to-wit: Caesar Jonathan Larson, born May 12, 1972, and Genre Mackenzie Alexandra Larson, born August 11, 1976.

"The Court finds that the children are presently in the care and custody of the defendant at Minot, North Dakota, with his parents assisting him. During the school year the children reside mostly with their grandparents who live directly across the street from a grade school. The children are receiving very good care and control in their present situation. The defendant is a 'very, very loving father'. The best interest of the children will be served in the custody of the defendant.

## "V.

"The plaintiff is a sophisticated, educated, intelligent and attractive woman who knows her way around. She has become accustomed to a fast living-society and life style. She operates a Keepsake Diamond Store in Bismarck, North Dakota and will have no trouble keeping proper records, payrolls and tax statistics in that business. For the past two years the plaintiff has had either a Mr. Fahy or a Mr. Ebert living with her in her home for weeks at a time, and on other occasions as overnight guests. During some of these times the children were living with her and were present in her home while the men were living there. Just a few days before the hearing herein the plaintiff had occupied a hotel room in Minot, North Dakota with Mr. Ebert.

## "VI.

"The Court has no doubt that plaintiff loves the children, nor has the Court reason to believe she was not a good mother.

## "VII.

"The children and the four grandparents enjoy a good relationship and will continue to receive the love and affection of both sets of grandparents. The children are currently happy and receiving good care."

The district court thereafter concluded that:

## "II.

"The defendant shall have the care, control and custody of the minor children, Caesar Jonathan Larson, born May 12, 1972, and Genre Mackenzie Alexandra Larson, born August 11, 1976, subject to the right of reasonable visitation in the plaintiff at reasonable times and places and upon 24 hours notice to the defendant.

"Defendant shall be solely responsible for the support of the minor children."

Judgment was entered on August 30, 1979. Sheryl has appealed to this court from that judgment. She contends that the district court's findings "are inadequate and confusing" and fail to reveal whether or not the award of sole custody to her husband is in the best interests of the minor children. She further argues that the court improperly considered her morals and lifestyle in making its custody determination.

■ A trial court's determinations on matters of child custody are treated as findings of fact. *Lapp v. Lapp*, 293 N.W.2d 121 (N.D.1980); *Hegge v. Hegge*, 236 N.W.2d 910 (N.D.1975). Findings of fact will not be set aside on appeal unless clearly erroneous. Rule 52(a), N.D.R.Civ.P. A finding is clear-

ly erroneous only when, although there is some evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made. *Nastrom v. Nastrom*, 284 N.W.2d 576 (N.D. 1979).

We have repeatedly held, and our pertinent statutory provisions provide, that the paramount consideration in custody determinations is the best interests and welfare of the child. Sections 14–09–06.1 and 14–09–06.2, N.D.C.C.; *Lapp v. Lapp, supra; Kottsick v. Carlson*, 241 N.W.2d 842 (N.D. 1976). Section 14–09–06.2 enumerates the factors to be considered by a trial court when determining custody in a divorce dispute, and provides:

"For the purpose of custody, the best interests and welfare of the child shall be determined by the court's consideration and evaluation of all factors affecting the best interests and welfare of the child. These factors include all of the following when applicable:

1. The love, affection, and other emotional ties existing between the parents and child.

2. The capacity and disposition of the parents to give the child love, affection, and guidance and to continue the education of the child.

3. The disposition of the parents to provide the child with food, clothing, medical care, or other remedial care recognized and permitted under the laws of this state in lieu of medical care, and other material needs.

4. The length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity.

5. The permanence, as a family unit, of the existing or proposed custodial home.

6. The moral fitness of the parents.

7. The mental and physical health of the parents.

8. The home, school, and community record of the child.

9. The reasonable preference of the child, if the court deems the child to be of sufficient intelligence, understanding, and experience to express a preference.

10. Any other factors considered by the court to be relevant to a particular child custody dispute.

"In any proceeding under this chapter, the court, at any stage of the proceedings after final judgment, may make orders about what security is to be given for the care, custody, and support of the unmarried minor children of the marriage as from the circumstances of the parties and the nature of the case is equitable."

A close examination of the record shows, and the district court's findings as set forth herein reveal, that each of the applicable factors were addressed and considered by the district court in determining custody of the minor children in the present case. Further, the court's findings indicate that "[t]he best interest[s] of the children will be served in the custody of the defendant [Robert]."

Sheryl does not contend that her husband is an unfit, custodial parent. She testified that "he [Robert] is a very, very loving father." Nor has she asserted that the present custodial arrangement is not in the best interests of the children. Instead, Sheryl's primary contention is that she is also a fit parent, and she argues that the district court improperly considered her morals and life-style in making the custody determination.

■ While we recognize that the district court expressed no doubt that Sheryl loved the children and was a good mother, the fitness of parents is not *the test* for custody awards, nor is fairness to the parents *the test. Odegard v. Odegard*, 259 N.W.2d 484 (N.D.1977). The primary consideration is the best interests of the children.

■ With respect to past moral indiscretions of a parent, we have held that the admitted adultery of a spouse on one occasion does not preclude an award of custody in a divorce action where the evidence indicated that in all other respects the spouse was a good parent and the children were

always clean and well cared for. *Ficek v. Ficek*, 186 N.W.2d 437 (N.D.1971). However, the moral fitness of the parents is *one of the factors* for the trial court to properly consider in custody determinations, and the Legislature has so provided. *See* Section 14–09–06.2(6), N.D.C.C.

 The record discloses that Sheryl has had several live-in paramours over the past few years, and has engaged in a rather liberal life-style to which her children have been exposed while present in her apartment. The moral values which Sheryl has demonstrated to the children are supportive of the district court's finding that the best interests of the children would be served in the custody of Robert. We do not believe that the trial court's apparent, but unvoiced, conclusion that the children's daily presence in Sheryl's environment could be injurious to their moral well-being and development is clearly erroneous. *See Jarrett v. Jarrett*, 78 Ill.2d 337, 36 Ill.Dec. 1, 400 N.E.2d 421 (1980). Sheryl, while not denying her life-style, argues that no evidence was presented to show that her morality, life-style, or social activities have caused the children any detriment, and thus that she should have their custody. We agree with the sentiment expressed in *Jarrett* that "[m]easures to safeguard the moral well-being of children, whose lives have already been disrupted by the divorce of their parents, cannot . . . be delayed until there are tangible manifestations of damage to their character." *Jarrett v. Jarrett*, 36 Ill.Dec. at 5, 400 N.E.2d at 425. The trial court's decision is a precautionary one which should be respected until proof of changed circumstances justifies a change in that custody. Section 14–05–22, N.D.C.C., provides for such remedial procedure when appropriate.

The district court found that the children were receiving very good care and were under proper control in their present environment with Robert and his parents. The desirability of maintaining a stable, healthy, and satisfactory environment warrants the continuation of the existing custodial home with reasonable visitation rights in Sheryl.

As we recently said in *Lapp v. Lapp*, 293 N.W.2d at 121:

"The trial court had the parties and numerous witnesses before it, and it had the grave and difficult responsibility of determining the best interests of the child. The trial court is better able than we are to discover the true facts as it is able to listen to and observe the demeanor of the witnesses, whereas we are bound by the cold record on appeal. 'The mere fact that the appellate court might have viewed the facts differently, if it had been the initial trier of the case, does not entitle it to reverse the lower court.' *Bosma v. Bosma*, 287 N.W.2d 447, 451 (N.D.1980)."

We believe that the trial court's findings of fact reveal a consideration and evaluation of the applicable factors affecting the best interests and welfare of the children. We are not left with a definite and firm conviction that a mistake has been made.

Judgment affirmed.

VANDE WALLE, PEDERSON, PAULSON and SAND, JJ., concur.