**Gregory S. THORLAKSEN, Plaintiff and Appellant,**

v.

**Robin C. THORLAKSEN, n/k/a Robin C. Lang, Defendant and Appellee.**

**Civ. No. 890245.**

Supreme Court of North Dakota.

March 27, 1990.

Harms Law Offices, Ltd., Williston, for plaintiff and appellant; argued by Robert W. Harms.

Rustad & Schmitz, P.C., Williston, for defendant and appellee; argued by Cathy Howe Schmitz.

MESCHKE, Justice.

Gregory Thorlaksen appealed from a decree placing their three children in the primary custody of his former spouse, now Robin Lang, and ordering him to pay her child support of $600 per month except "for any month in which he has the children for three (3) weeks or more." We reverse a finding that Greg was in contempt for nonpayment of support and we otherwise affirm.

Greg and Robin married young. Their daughters, Amanda and Sarah, were born in 1979 and 1981, and their son, Eric, was born in 1984. In 1987, Robin moved into Tioga from the family's nearby rural home and they agreed to a divorce. In August 1987, the stipulated divorce decree agreed on "joint care, custody and control of the minor children" for Greg to have primary custody during each school week and for Robin to have custody on weekends and during most summer weeks. Greg agreed to pay support to Robin of $100 per month per child during June, July and August of each year.

In September 1987, Robin sought relief from the decree. The trial court vacated the judgment because Robin had not been represented by counsel in the divorce set-

tlement. After home studies, a pre-trial conference, partial trial, psychological evaluations, and completion of the trial in April 1989, custody and support were redetermined. During these prolonged proceedings, Robin married Jerald Lang, they had a child of their own in September 1988, and they moved to Des Lacs, North Dakota. The trial court ruled that "the parents shall have joint custody with the primary possession of the children with Robin during the school year and with ... Greg, during the summer months." The trial court also decreed that Greg pay child support to Robin of $200 per month per child, totalling $600 each month commencing May 1, 1989.

In July 1989, Greg asked the trial court to reconsider. After a hearing, the trial court modified Greg's support obligation by suspending it for each month in which he had the children for three weeks or more, including August 1989. The trial court "divide[d] the children for tax exemption purposes for the 1989 tax year and thereafter," giving Greg two and Robin one, and restricted Robin from changing the children's residence outside of North Dakota. The trial court also ruled that it was "without power or authority" to relieve Greg from paying support past due and that Greg was in contempt for not paying child support for May, June, and July. All other changes sought by Greg were denied.

Greg appealed, claiming that the placement of custody and the computation of support were clearly erroneous. Greg also claimed that the trial court erroneously found him in contempt for not paying child support for May, June, and July of 1989 "while the children were with him."

## CUSTODY

Greg argued that the trial court made several errors in placing custody "which should be reversed and custody restored to Greg." Robin responded that the errors did not affect any substantial rights and that the trial court "correctly followed statutory guidelines as well as expert testimony" in placing primary custody of the children with Robin. We agree with Robin.

■ In the trial court's memorandum ruling, the trial court summarized matters to be decided:

It was agreed at the pretrial conference of the 13th of June, 1988, that the main issue remaining in dispute was the issue of custody, child support, and visitation as the parties had agreed in April by stipulation the Court should enter an absolute decree of divorce, each from the other, in the action immediately and that the further resolution of the issues ... would await further appropriate proceedings.

Greg attacked this reference to an April stipulation for an absolute divorce as clearly erroneous, apparently believing that Robin's remarriage, before all aspects of the divorce were final, put her in a bad light as a bigamist. While there was only a proposed and not a completed stipulation about the decree of divorce in April, the record shows that Robin was remarried in May 1988 and that, at a June 1988 pretrial conference, it was agreed that the only remaining issues were custody, support and visitation. Although the trial court did inaccurately state a detail about the stipulation, the issues were thus narrowed and the divorce itself was not disputed.

Greg clamorously criticized Robin's morals at the trial but the trial court found her fit. The trial court did not believe Greg's witnesses who suggested Robin's conduct was immoral and the trial court found that "I don't think [Robin] knowingly committed bigamy or adultery, if at all." We, too, reject Greg's continuing effort to disparage Robin. Her marriage to Jerald does not adversely affect her fitness for custody of her children.

■ In deciding custody, the trial court used an "addendum" to a home studies report. The trial court quoted the addendum as saying that "the girls were becoming more anxious about the permanent custody and were trying in their own way to get to their mother by complaining about their father and his restrictive visitation, which, in effect, was creating an increased stress." For those reasons, the trial court said that it "does not feel that the desirabil-

ity of maintaining the continuity [in Greg's home] is important."

Greg complained that it was error for the trial court to use an addendum which was not in evidence. Greg cited *Hultberg v. Hultberg*, 259 N.W.2d 41 (N.D.1977), which held that the use of a report from a court-appointed expert was error when it was not in evidence and when the parties had no opportunity to cross-examine the expert.

NDCC 14–09–06.3 authorizes a trial court to order a public agency to investigate and report arrangements for custody.[1] At the request of Robin's attorney, the trial court ordered the Williams County Juvenile Supervisor "to arrange for an investigation and report concerning custodial arrangements on these children," with costs divided equally between Greg and Robin. The home studies were done by Louise Torkelson, a licensed social worker with Williams County Social Services. She reported both homes were satisfactory. Her report was not put in evidence but Louise Torkelson was called as a witness by Robin at the first part of the trial in August 1988. Torkelson testified that Robin's home was satisfactory and she was cross-examined by Greg's attorney.

Later, in October 1988, Torkelson filed the addendum after a visit with the two girls in their school. The record does not explain why this additional investigation and report was done. Although the trial was completed after that, in April 1989, the addendum was not put in evidence nor was Torkelson called for more testimony.

Ordinarily a trial court must decide from the evidentiary record of testimony and exhibits. NDRCivP 43; *Hultberg v. Hultberg; Wood v. Krenz,* 392 N.W.2d 395 (N.D.1986). A trial court may call a witness on its own motion or at the suggestion of a party, and all parties are entitled to cross-examine a witness thus called. NDREv 614(a). A trial court may appoint an expert witness, who may be called to testify by the court or any party. NDREv 706. Constitutionally, a statute could make a report of an official investigation admissible without calling the person who made it as a witness, if opportunity for cross-examination is preserved. 2 J. Wigmore, Evidence § 563, n. 5 (Chadbourn rev. 1979). But it is unclear whether NDCC 14–09–06.3 was intended to make a home studies report evidentiary without formal effort. The statute does say that "[a] party may call the investigator ... for cross-examination...." *Id.* For a trial court to use a home studies report, it should be made a part of the evidentiary record. Nevertheless, a parent desiring to challenge a statutory report on custodial arrangements should take some action to contradict it. Greg had opportunities to do so but didn't.

Like the original home studies report, this addendum was apparently submitted to both parents by the court after it was filed. Greg had an opportunity to call Torkelson for cross-examination when the trial was thereafter completed. In addition, at the hearing on his motion for recon-

---

1. NDCC 14–09–06.3 says:

*Custody investigations and reports—Costs.*

1. In contested custody proceedings the court may, upon the request of either party, or, upon its own motion, order an investigation and report concerning custodial arrangements for the child. The court shall designate a person or agency responsible for making the investigation and report, which designees may include the county social service board, public health officer, school officials, and any other public agency or private practitioner it deems qualified to make the investigation.

2. The investigator may consult any person who may have information about the child and any potential custody arrangements, and upon order of the court may refer the child to any professional personnel for diagnosis.

3. The court shall mail the investigator's report to counsel and to any party not represented by counsel at least thirty days before the hearing. The investigator shall make available to any such counsel or party the complete file of data and reports underlying the investigator's report and the names and addresses of all persons whom the investigator has consulted. A party may call the investigator and any person whom the investigator has consulted for cross-examination at the hearing. A party may not waive the party's right of cross-examination before the hearing.

4. The court shall enter an order for the costs of any such investigation against either or both parties, except that if the parties are indigent the expenses shall be borne by the county.

sideration after the trial court's decision, Greg had another opportunity to challenge the addendum or to object to the trial court's use of it in the decision. Greg did not use those opportunities. Under these circumstances, we conclude that the trial court's use of the addendum in this case was not inconsistent with substantial justice. NDRCivP 61. We deem the error harmless.

■ The trial court said that "it's only normal, natural, and right that [the girls] want to be near their mother at their age" and that the boy "[a]t that age ... needs its mother's care more than its dad's." Emphasizing that parents have equal rights to care, custody, education, and control of their minor children, NDCC 14–09–06, Greg insisted that these statements showed that the trial court used an improper gender bias in deciding custody.

We agree that if the trial court assumed that small children always need their mother more than their father, an improper factor was used. However, Robin argued that the trial court's comments should not be looked upon as an improper expression of gender bias, but rather as "harmless editorializing that only approves of the children's clear choice" or as summarizing that these children's stated preference for their mother was reasonable. We conclude that the trial court did not use an improper gender bias to decide custody.

By the point in its memorandum opinion where the challenged remarks were made, the trial court had already determined that the "girls now show a strong bonding toward their mother and definitely have expressed their desire to live with her," and that "Robin is viewed more favorably by all three children than Greg...." Evidence showed that Robin had been the primary caretaker of the children until the separation and that she was again a full time homemaker. The trial court had some doubt about whether it was a "good arrangement" for these young children when Greg had "to be gone from [his] farm [home] getting baby-sitters and for other reasons, even though for a short length of time." The trial court found that, in psychological evaluations, "Robin outscored Greg" as a parent and that "Robin would be the more warmer and affectionate parent to assist the children...."

The trial court concluded that it was in the best interests of these three children to be primarily located with Robin. A determination on child custody is a finding of fact which will not be set aside on appeal unless clearly erroneous. NDRCivP 52(a); *Roen v. Roen*, 438 N.W.2d 170 (N.D.1989). We are satisfied that the trial court fairly weighed the evidence between two fit parents and properly determined custody on appropriate factors. We affirm placement of custody.

## CHILD SUPPORT

■ The trial court ordered Greg to pay child support to Robin of $200 per month per child, totalling $600 per month, except for any month when Greg has the children for three weeks or more. Even though the trial court noted that this was "somewhat less" than the "guideline" amount of $730 per month for Greg's monthly net income of over $2,100,[2] Greg urged us to conclude that this child support award was clearly erroneous because "[t]here appears to be no basis or explanation of the manner in which the Court set the child support."

The trial court's memorandum demonstrated an awareness of the comparative income for Robin's present household when it found that

Robin is now married to Jerald Lang, who reported ... earning $1,525.00 per month and receiving another $355.00

---

**2.** Until July 1989, guidelines were just guidelines. Under the statute as amended by S.L. 1989, ch. 148, § 4, "guidelines" for support became presumptively correct amounts to be awarded by a court. NDCC 14–09–9.7(3). "The presumption may be rebutted if a preponderance of the evidence ... establishes that factors not considered by the guidelines will result in an undue hardship to the obligor or a child for whom support is sought. A written finding or a specific finding on the record must be made if the court determines that the presumption has been rebutted." *Id.* This case is governed by the statute as it existed before the 1989 amendment.

from social security for his son by a former marriage.

The trial court did not discuss the financial needs of the children, but neither did Greg's brief on appeal. We cannot conclude that child support below guideline amounts is too large without some showing that the custodial parent does not need all of it for the children or that the payor's financial circumstances are too distressed to pay all of it. *Heggen v. Heggen*, 452 N.W.2d 96 (N.D.1990). "Child support is a finding of fact subject to review by the clearly erroneous standard." *Olson v. Olson*, 445 N.W.2d 1, 4 (N.D.1989). We conclude that this child support of $200 per month per child was not clearly erroneous.

The amended judgment entered in May 1989, after the trial court's award of support in April, decreed that child support payments "shall commence May 1, 1989." Not until July 12, 1989, did Greg move to modify the amount for those months in which he continued to have custody of the children. When Greg sought reconsideration, he had only paid Robin $136. The trial court reduced support for the summer months beginning in 1990, so that Greg would not have to "pay child support for any month in which he has the children for three (3) weeks or more." In doing so, the trial court ruled that it was "without power or authority to grant the relief requested for the month of July and relief for [prior] month[s] is hereby denied. However, support for the month of August, 1989 shall also be suspended."

From the hearing on July 21, 1989, the trial court believed that Greg was refusing to pay the balance of $1,664 in support due for May, June and July. Therefore, the trial court found Greg in contempt for not paying those amounts and ordered him to turn himself into the Sheriff three days later, except that

> Greg may purge himself of this contempt citation by paying the support for May, June, and July on or before 12:00 o'clock noon July 24, 1989.

Rather than quarrel with this imperious contempt order, Greg understandably chose to pay at once and complain later.

On this appeal, Greg complained that the contempt ruling was made without fair procedures, notice, or hearing. In seeking reversal of the contempt finding, Greg also asked that he "be given credit for the support that he paid for the months of May and July in the amount of $1,064.00." Robin responded that Greg had spent $790 to add a new deck to his home and had planned a Colorado vacation during the months that support went unpaid. Robin suggested that we take note of Greg's argumentative attitude in responding to the trial court's questions about why he hadn't timely paid the support or sought relief sooner. Robin argued that this conduct was a direct contempt in the immediate view and presence of the trial court which warranted summary punishment.

■ A trial court has power to use contempt procedures to compel obedience to an order to perform a specific act, such as payment of support. NDRCivP 70. Indirect civil contempt arising from non-performance of a judicial decree outside of the immediate view and presence of a trial judge can be punished only after notice and fair hearing. *Baier v. Hampton*, 417 N.W.2d 801, 805–06 (N.D.1987). While the trial court may have been rightly irritated by Greg's stubborn attitude about not paying overdue support, the contempt finding was for non-payment, not disrespect. No notice had been given that a purpose of the hearing was to enforce payment of support. *See Gerhardt v. Robinson*, 449 N.W.2d 802 (N.D.1989). Therefore, the trial court did not properly follow rules of procedure in making the contempt finding.

■ While we reverse the finding of contempt, we are unable to grant any additional relief. Child support was due on the first of each month, beginning May 1. Therefore, Greg's application on July 12 to modify his support obligation for May, June, and July was simply too late. *See Schmidt v. Schmidt*, 432 N.W.2d 860, 863, n. 3 (N.D.1988). As the trial court correctly told him, it was unable to retroactively reduce support payments past due. *See Guthmiller v. Guthmiller*, 448 N.W.2d 643, 649 (N.D.1989) ("[A]ccrued, but unpaid

child support payments cannot be modified.") In keeping with our long-standing view of vesting of accrued support, we are unwilling to retroactively adjust unpaid child support. We can remove the stigma of contempt from Greg's record, but we cannot award him a monetary adjustment.

We conclude that any error in the rulings of the trial court on custody or the amount of support were harmless. NDRCivP 61. The trial court properly placed primary custody of the three children with their mother, Robin, and fairly required their father, Greg, to pay child support of $200 per child per month. We reverse the finding of contempt and we otherwise affirm.

ERICKSTAD, C.J., and LEVINE and VANDE WALLE, JJ., concur.

GIERKE, J., concurs in the result.