David FORENG, Plaintiff and Appellant,

v.

Rita FORENG, Defendant and Appellee.

Civ. No. 930094.

Supreme Court of North Dakota.

Dec. 2, 1993.

Frith, Schwarz & Steffan, Devils Lake, for plaintiff and appellant; submitted on briefs.

Gregory Law Firm, Grand Forks, for defendant and appellee; submitted on briefs.

LEVINE, Justice.

David Foreng appeals from an amended judgment granting his former wife, Rita Foreng, physical custody of their two minor children and requiring him to pay child support, provide medical insurance for one of the children, and pay $1,000.00 of Rita's attorney fees. We affirm the award of custody and attorney fees, but reverse the award of child support and remand for specific findings.

David and Rita Foreng were married December 7, 1985. They had two children during their marriage, one with cerebral palsy who requires a brace and medication. David and Rita separated in September 1991, and David initiated this divorce action in December 1991.

## I. CUSTODY

The trial court awarded physical custody of the two children to Rita. Trial courts must make custody determinations according to the best interests and welfare of the child. NDCC § 14–09–06.1; *see also, e.g., Freed v. Freed,* 454 N.W.2d 516 (N.D. 1990). Trial courts have substantial discretion in determining a child's best interests. *E.g., Freed, supra.* We treat a trial court's custody determinations as findings of fact and review them under a clearly erroneous standard. NDRCivP 52(a); *e.g., Freed, supra.* A finding of fact is clearly erroneous when no evidence exists to support it or the reviewing court, on the entire evidence, has a definite and firm conviction that the trial court made a mistake. *E.g., Dinius v. Dinius,* 448 N.W.2d 210 (N.D.1989).

David alleges numerous errors in the court's custody determination. He argues that the trial court clearly erred in finding that Rita's extramarital relationship did not have a negative effect on the children, that Rita adequately met the disabled child's special needs, that Rita provided a more comfortable home environment for the children, and that Rita's parenting skills were adequate, and in adopting the findings of a home study which recommended that the court award custody to Rita. All of these arguments allege fact-based errors. Because the evidence supports each of the challenged findings and we are not definitely and firmly convinced that the trial court made a mistake, we conclude that the findings are not clearly erroneous.

Only two of David's arguments merit further discussion here. David argues that

the trial court erred by considering which spouse was the primary caretaker. Section 14–09–06.2 provides trial courts with a checklist, a menu of relevant factors, to consider in determining the best interests and welfare of a child. Several of those factors bear upon the parties' parenting ability, emotional disposition and relationship with the child. *See* NDCC § 14–09–06.2(1)(a), (b), (d), (e). While a trial court may not rely upon the primary caretaker status to the exclusion of all other factors, it certainly should consider which parent served as the primary caretaker. NDCC § 14–09–06.2(1)(a), (b), (d), (e); *see also, e.g., Wolf v. Wolf,* 474 N.W.2d 257 (N.D.1991); *Dinius, supra* (Levine, J., dissenting). Established patterns of care and nurture are relevant factors. *Heggen v. Heggen,* 452 N.W.2d 96 (N.D.1990). "Continuity in a child's relationship with the closest, nurturing parent is ... a very important aspect of stability." *Roen v. Roen,* 438 N.W.2d 170, 174 (N.D.1989). Here, the trial court found that Rita's employment allowed her to spend more time with the children, that Rita was more experienced in providing and better able to provide daily care for the children, and that it was in the children's best interests to continue living in the "stable, satisfying environment" of Rita's home. The trial court did not err in focusing on Rita's primary-caretaker status and considering its substantial impact on the children's best interests.

■ David also argues that the trial court erred by ignoring Rita's "illegal and definitely immoral" behavior. David refers to Rita's extramarital relationship. In custody determinations, trial courts may consider the moral fitness of each parent. NDCC § 14–09–06.2(1)(f). Here, the trial court found that Rita had "shield[ed] the children from any immoral activity that occurred prior to the dissolution of this marriage." The court further stated that it "[did] not condone the involvement but [did] not view it as being detrimental to the children." We find that the trial court adequately considered Rita's moral fitness in its custody determination. We refuse to adopt David's suggestion that evidence of extramarital relationships, per se, is an irrefutable indication of moral unfitness. *See Larson v. Larson,* 294 N.W.2d 616, 618 (N.D.1980) ["[A]dmitted adultery of a spouse on one occasion does not preclude an award of custody in a divorce action where the evidence indicated that in all other respects the spouse was a good parent...."].

We hold that the trial court's determination of the Foreng children's best interests and its award of physical custody to Rita are not clearly erroneous.

## II. CHILD SUPPORT

■ David argues that the trial judge erred in setting the amount of child support at $200.00 per month for each child. NDCC § 14–09–09.7(3) establishes a rebuttable presumption that application of the child support guidelines, NDAdminC ch. 75–02–04.1, results in the correct amount of child support. A trial court determines the presumptively correct amount of child support by applying the scheduled amounts in NDAdminC § 75–02–04.1–10 to the obligor's net income and the number of children for whom support is sought. NDAdminC § 75–02–04.1–10. But the trial court made no finding of David's net income. Instead, it stated only that "[David] shall pay to [Rita] the sum of $200.00 per child per month."

A trial court's findings of fact must explain adequately the basis for its decision. *Spilovoy v. Spilovoy,* 488 N.W.2d 873 (N.D.1992). A finding of net income is now essential because of the advent of the rebuttable presumption that the child support guidelines establish the correct amount of support. To apply the guidelines, a trial court must determine the obligor's net income. To review a trial court's application of the guidelines, this court must have the trial court's determination of net income. Because the trial court's findings of fact "shed no light" on how it computed David's child support obligation, *see Spilovoy, supra,* and do not indicate that the trial court applied the guidelines, we remand for a specific finding of David's net income and computation of child support under the child support guidelines. *See Heley v. Heley,* 506 N.W.2d 715 (N.D.1993); *Bernhardt v. K.R.S.,* 503 N.W.2d 233 (N.D.1993).

David also argues that the trial court erred in ordering him to provide medical insurance

for one of the children. A trial court may require an obligor to obtain dependent health insurance. NDCC § 14–09–08.10(2). However, under the guidelines, premium payments for dependent health insurance are subtracted from an obligor's gross income to calculate net income. NDAdminC § 75–02–04.1–01(4)(d). Because the trial court did not make a finding of David's net income, we remand for proper calculation of health insurance premium payments and net income under the guidelines.

### III.  ATTORNEY FEES

▮ David argues that the trial court abused its discretion in ordering him to pay, in part, Rita's attorney fees below. Trial courts have the discretion to award attorney fees in divorce actions under NDCC § 14–05–23. A trial court abuses its discretion when it acts in an arbitrary, unreasonable or unconscionable manner. *E.g., State ex rel. Younger v. Bryant,* 465 N.W.2d 155 (N.D. 1991). David asks us to construe attorney fees as "alimony" and, under *Hegge v. Hegge,* 236 N.W.2d 910 (N.D.1975), to find that Rita, as an "adultress," is not entitled to attorney fees as alimony.

▮ "Alimony," in North Dakota law, "is used in a generic sense and means any payment to be made to the other spouse for any purpose, including payment as a part of a property division, spousal support, or child support or a combination of any of them." *Lipp v. Lipp,* 355 N.W.2d 817, 820 (N.D. 1984). That attorney fees may constitute "alimony" in its generic sense does not trigger application of *Hegge.* In *Hegge, supra* at 913, the court reversed an award of "alimony," actually, rehabilitative spousal support, to a wife who had "several extramarital affairs." The court concluded that the wife's conduct was so extreme as to constitute abandonment and desertion of the husband. The dissent, however, offered a different analysis. In any event, even if *Hegge*'s holding that an unfaithful spouse is not entitled to rehabilitative spousal support remains viable,[1] a matter we need not decide, it does not apply to an award of attorney fees.

▮ The principal standards guiding an award of attorney fees in a divorce action are one parent's need and the other's ability to pay. *Pozarnsky v. Pozarnsky,* 494 N.W.2d 148 (N.D.1992). Fault is a consideration in awarding attorney fees only to the extent that one party has escalated the fees unreasonably. *See Jondahl v. Jondahl,* 344 N.W.2d 63 (N.D.1984); *Heller v. Heller,* 367 N.W.2d 179 (N.D.1985). Although the trial court did not make any specific findings of David's or Rita's financial circumstances with regard to attorney fees, it had before it evidence of the parties' resources and an itemized statement of Rita's attorney fees

---

1. Professor O'Kelly tactfully suggests that the rationale in *Hegge* is flawed because it "predated" the court's endorsement of, and, presumably, understanding of, rehabilitative maintenance. Marcia O'Kelly, *Entitlements to Spousal Support After Divorce,* 61 N.D.L.Rev. 225, 258 n. 144 (1985). She explains the dissonance between the concepts of rehabilitative maintenance and fault:

> "Fault is completely irrelevant to entitlements to rehabilitative maintenance. Certainly fault cannot be relevant to the minimalist concept of rehabilitative support based upon need, as it cannot affect the determinative fact of whether or not a former spouse needs education or training in order to be financially self-sufficient. Fault has no effect upon the standard of living established during marriage or the opportunities foregone because of an economic role within marriage; thus, fault should not be considered for determining an appropriate level of post-marital rehabilitation beyond minimal self-support. Irrespective of whether fault should be treated as relevant to

the sharing of assets and advantages achieved during a marriage, it is illogical to treat it as if it could either reduce or somehow eliminate the disadvantage imposed upon one party by the fact of divorce or by the impact of an economic role within a marriage. Once rehabilitative support is understood as a means of mitigating a disadvantage rather than as an entitlement premised upon positive contributions within a marriage, the irrelevance of fault should be evident." *Id.* at 257–58.

While there is disagreement over the impact of non-economic fault on property division, *see Erickson v. Erickson,* 384 N.W.2d 659, 662 (N.D. 1986) (Levine, J., specially concurring) ["Marital misconduct which is not significantly related to the economic condition of the marriage is not germane to a division of property and should not be considered."], there is unanimity on the irrelevance of non-economic fault to child support. *See Heller v. Heller,* 367 N.W.2d 179, 181 (N.D. 1985) ["Unless fault were directly related to a party's ability to provide [child] support, it is of no moment."].

and costs. We believe the trial court took into account each party's resources and costs and we conclude that it did not abuse its discretion in awarding attorney fees to Rita. *See Gooselaw v. Gooselaw,* 320 N.W.2d 490 (N.D.1982).

Affirmed in part, reversed in part and remanded.

MESCHKE and NEUMANN, JJ., concur.

VANDE WALLE, C.J., and SANDSTROM, J., concur in the result.