Roland W. DALIN, Plaintiff
and Appellant,

v.

Patricia Jo DALIN, Defendant
and Appellee.

Civ. No. 930159.

Supreme Court of North Dakota.

Feb. 23, 1994.

Brenda M. Zent of Farhart, Lian, Maxson, Louser & Zent, Minot, for plaintiff and appellant.

David W. Nelson, Williston, for defendant and appellee.

LEVINE, Justice.

Roland W. Dalin appeals from an amended judgment modifying child custody and child support. We affirm.

The Dalins were married on June 9, 1989 in Tioga, North Dakota. They had one child during the marriage, born on December 11, 1989. They were divorced on January 21, 1992.

In the original divorce judgment, the district court granted roughly equal-time physical custody of the child to Patricia and Roland until the child reached school age. Roland had custody in September, November, January, March and half of July, during which Patricia had visitation every other

weekend. Patricia had custody in February, April, May, June, August, October, December and half of July, during which Roland had visitation for ten days of each month. Roland was to pay child support of $75.00 for each month that Patricia had primary custody. Patricia was to pay no child support. On February 6, 1992, the judgment was modified to correct a clerical error. On October 6, 1992, the judgment again was modified by stipulation to give sole custody to Roland for four months, beginning July 29, 1992, after which custody would revert to the schedule originally ordered by the court. On December 31, 1992, Roland moved for modification, requesting sole custody. During the hearing on Roland's motion, Roland and Patricia stipulated to a "significant change of circumstances necessitating a change of custody." The trial court awarded custody to Patricia from August 25 to June 5 of each year and to Roland during the summer. The trial court also ordered each to provide child support according to the child support guidelines, NDAdminC ch. 75-02-04.1, when not exercising custody over the child.

Roland appealed. He argues that the trial court's custody determination was clearly erroneous and a result of gender bias, and that the trial court's modification of Roland's child support obligation was clearly erroneous. ·

▮ We treat a trial court's custody determinations as findings of fact and review them under a clearly erroneous standard. NDRCivP 52(a); *e.g., Foreng v. Foreng,* 509 N.W.2d 38 (N.D.1993) [original custody determination]; *Johnson v. Schlotman,* 502 N.W.2d 831 (N.D.1993) [modification of custody]. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or if the reviewing court, on the entire evidence, has a definite and firm conviction that the trial court made a mistake. *E.g., Johnson v. Schlotman, supra.*

▮ For an original custody determination, the trial court must determine only the best interests and welfare of the child. NDCC § 14-09-06.1; *see also, e.g., Gould v. Miller,* 488 N.W.2d 42, 43 (N.D.1992). Trial courts have substantial discretion in deter-

mining a child's best interests. *E.g., Foreng, supra.*

▮ For a change of custody determination, the trial court must engage in a two-step analysis. *E.g., Barstad v. Barstad,* 499 N.W.2d 584 (N.D.1993). First, the trial court determines whether a significant change of circumstances has occurred since the original custody decree. *Id.* If the court finds a significant change of circumstances, then it must decide whether that change so adversely affects the child that it compels or requires a change in custody to foster the child's best interests. *Hagel v. Hagel,* 512 N.W.2d 465 (N.D.1994); *Johnson v. Schlotman, supra* at 834; *Delzer v. Winn,* 491 N.W.2d 741, 743-44 (N.D.1992); *Blotske v. Leidholm,* 487 N.W.2d 607, 609 (N.D.1992). The best-interests analysis in a decision to modify custody differs from that in an original custody decision, where the trial court simply applies the best-interests factors of NDCC § 14-09-06.2. *Gould v. Miller, supra* at 43. In deciding whether to modify custody, the trial court must gauge the factors of section 14-09-06.2 "against the backdrop of the stability of the child's relationship with the custodial parent." *Barstad, supra* at 587; *Orke v. Olson,* 411 N.W.2d 97 (N.D.1987). A child is presumed to be better off with the custodial parent, and the trial court should resolve close calls in favor of continuing custody. *Delzer v. Winn, supra* at 747 (Levine, J., concurring). The trial court should change custody only when the reasons for transferring custody substantially outweigh the child's stability with the custodial parent.

▮ Here, however, the parents stipulated to a "significant change of circumstances necessitating a change of custody," thus dispensing with the need for the usual two-step analysis and its presumption in favor of maintaining the custodial status quo. Instead, the judge properly treated this case as an original disputed custody case and applied the factors of section 14-09-06.2 within the wide range of discretion it has to weigh each factor. *E.g., Foreng, supra.* The parents' agreement that there was a change of circumstances that required or necessitated a change in custody freed the judge from the constraints of the two-step analysis ordinari-

ly required in modification proceedings and allowed him to treat this case as an original custody determination. Therefore, we limit our review of the trial court's custody modification to whether its determination of the child's best interests was clearly erroneous.

The trial court determined that the best interests of the child were met by placing the child in Patricia's custody. The trial court concluded that although "both parents care deeply" for the child and "are fit parents for custody," Patricia "seems best able to give love and affection without jeopardizing the relationship desirable with the non-custodial parent." *See* NDCC § 14-09-06.-2(1)(b). In so concluding, the trial court found significant the criticism by Roland and his mother of Patricia's lifestyle and parenting abilities, particularly "their beliefs that there are absolutely no redeeming values to Patricia's parenting skills." It is evident that the trial court was concerned about the future of the child's relationship with Patricia, should Roland receive custody, given his unyielding disapproval of Patricia's parenting style. Failure of one parent to cooperate in the maintenance of the other parent's relationship with the child is a factor which the judge may consider relevant in a custody decision. *See, e.g., Gravning v. Gravning,* 389 N.W.2d 621 (N.D.1986); *Lapp v. Lapp,* 293 N.W.2d 121 (N.D.1980); *cf. Johnson v. Schlotman, supra* at 834–35 [affirming trial court's custody order based on its finding that father had not poisoned children's minds against mother]. The court noted that Patricia, on the other hand, was nonjudgmental about Roland's attitudes and would not degrade his relationship with the child.

Roland challenges the trial court's findings as clearly erroneous because they are not supported by the evidence, particularly the finding that Patricia's lifestyle was stabilizing. Conflicting evidence does not render a finding clearly erroneous. *See, e.g., Gillmore v. Morelli,* 472 N.W.2d 738 (N.D.1991). A choice between two permissible views of the evidence is not clearly erroneous. *Id.* Patricia testified that she currently holds a day job and has not had a drink since January. Roland makes much of Patricia's history of hosting parties, but Pa-

tricia testified that the parties took place when Roland had custody of the child or when the child was at a babysitter's. Although Roland presented one witness who contradicted Patricia's story and testified that she saw the child in the street during one of Patricia's parties, the trial court chose to give Patricia's testimony the weight it deemed appropriate. *See, e.g., Freed v. Freed,* 454 N.W.2d 516 (N.D.1990). Roland disagrees with the finding that he overstated the "wildness" of Patricia's former lifestyle. But weight and credibility determinations are the exclusive domain of the trial court. *Id.* The trial court commented on differences between the parties' "sincerity, demeanor, and responsiveness" and found in favor of Patricia. It is precisely because an appellate court cannot assess such intangibles from a cold record that we defer to the trial court. We conclude that the finding that Patricia's life was stabilizing is not clearly erroneous.

The trial court found that Roland and Patricia had custody of the child "roughly the same amount of time" since the divorce. Roland challenges the finding, pointing to his testimony indicating that he had custody approximately seventy percent of the time, although Patricia's testimony indicated that she had custody at least forty percent of the time. Primary caretaking is, of course, a significant factor in deciding custody. *Foreng, supra.* When both parents substantially share custody, deciding which, if either, is primary caretaker may involve more than a mathematical computation of the days spent in each parent's care, custody and control. The trial court found that neither party had permanence as a family unit due "to the constant shifting of the child" since the divorce. We cannot say that the trial court's finding that neither party clearly enjoyed the advantage of primary caretaker because of the alternating custodial schedule is mistaken.

Roland also challenges several of the trial court's findings which, he argues, are "contradicted by certain evidence." It is up to the factfinder, not us, to weigh conflicting evidence. The mere fact that we might have

viewed the evidence differently does not entitle us to reverse the trial court. *Reede v. Steen*, 461 N.W.2d 438, 440 (N.D.1990). We conclude that there is evidence in support of each of the challenged findings, and we are not left with a definite and firm conviction that the trial court made a mistake.

Roland also raises the issue of whether the trial court based its custody determination on improper gender bias. Roland points to the trial court's questioning of Roland's mother:

"THE COURT: In the event Rollie were the primary custodian, and in the event there [were] certain things in [the child's] training that might best be done by a woman, would it be your anticipation that you would be the teacher?

"THE WITNESS: No, Rollie is the teacher. And I just help him[.]

"THE COURT: Getting back to my question, in the event there are certain things that a girl should learn that [are] easiest to learn from a woman, would you be anticipating that you would be that woman?

"THE WITNESS: Yes."

Gender bias in judicial proceedings is wholly unacceptable. *See In re Iverson*, 11 Cal.App. 4th 1495, 15 Cal.Rptr.2d 70, 73 (1992) ["The day is long past when appellate courts can disregard judicial action rooted in racial or sexual bias as harmless error."]; *see also* Megan G. Mayer, Note, In re Marriage of Iverson: *Dubious Benefits in Reducing Judicial Gender Bias*, 3 UCLA Women's L.J. 105 (1993). We agree that if the trial court assumed that fathers, as a group, are incapable of adequately raising their daughters, it would be relying on an improper factor to determine custody. Trial courts should not "perpetuate the damaging stereotype that a mother's role is one of caregiver, and the father's role is that of an apathetic, irresponsible, or unfit parent." *In re Dubreuil*, 629 So.2d 819, 828 (Fla.1993); *see also Caban v. Mohammed*, 441 U.S. 380, 388, 99 S.Ct. 1760, 1766, 60 L.Ed.2d 297 (1979) [rejecting argument that distinction between unwed mothers and unwed fathers "is justified by a fundamental difference between maternal and paternal relations—that 'a natural mother, absent special circumstances, bears a closer relationship with her child … than a father does'" (alteration in original) ]. However, we do not believe the above exchange evidences that the trial court based its custody determination on the misguided, stereotypical assumption that daughters require female caregivers, as Roland argues. It was Roland himself who introduced the notion that help was available from his mother for tasks he had not performed or was uncertain about performing. The trial court merely followed up Roland's attorney's inquiry as to who did the cooking and Roland's disclosure that he relied on his mother for tasks such as potty training and hair braiding. Because Roland invited the trial court's questioning by introducing the idea that he felt some inability or discomfort in performing certain childcare tasks, he may not complain about the trial court's pursuit of the issue. *Cf. Wanner v. Getter Trucking, Inc.*, 466 N.W.2d 833, 836 (N.D.1991) [stating that defendant may not complain on appeal that witness' testimony was erroneous where testimony was responsive to defendant's question and defendant did not object to testimony]. Under the circumstances, we conclude that the trial court's questions were not motivated by or evidence of gender bias. After finding that both parents were fit and loving, the trial court "fairly weighed the evidence between two fit parents and properly determined custody on appropriate factors." *Thorlaksen v. Thorlaksen*, 453 N.W.2d 770, 774 (N.D.1990).

Finally, Roland argues that the trial court erred in modifying Roland's child support obligation. The trial court has continuing jurisdiction to modify a divorce judgment with respect to child support whenever a material change in circumstances has occurred. NDCC § 14–05–24; *Skoglund v. Skoglund*, 333 N.W.2d 795 (N.D.1983). Ordinarily, the change of circumstances necessary to modify child support is one based primarily on a change in financial circumstances. *Schmidt v. Schmidt*, 432 N.W.2d 860 (N.D.1988); *Skoglund, supra.*

The trial court ordered each parent to pay "child support as per the current child

support guidelines when the child is in the custody of the other." Although Patricia did not present evidence of a change in either parent's financial circumstances, the trial court concluded that the parents' stipulation to a change in circumstances required not only a redetermination of custody but also a redetermination of each parent's child support obligation. We believe a custody modification may constitute a material change in circumstances to allow a trial court to modify child support. In light of the custody modification and the trial court's direction that Patricia and Roland consider the child support guidelines in agreeing on child support obligations, we conclude that the trial court's modification of each parent's child support obligation was not clearly erroneous.

Roland also argues that he was not given adequate notice that his child support obligation could be modified. Although a trial court has continuing jurisdiction to modify child support upon a showing of a material change in circumstances, there must be orderly notice and procedure. *Gerhardt v. Robinson,* 449 N.W.2d 802 (N.D.1989). However, Roland's motion for modification of custody asked the trial court to determine Patricia's child support obligation and eliminate his in the event he was granted custody. Although Roland was not granted custody, he must have contemplated that a change in custody would necessitate a redetermination of the parents' child support obligations. Roland may not argue that he was not given notice simply because the outcome was contrary to his expectations.

Affirmed.

NEUMANN, Justice, concurring.

I agree with most of the majority opinion. I write separately only to point out that there is more than the parents' stipulation in this case to obviate the normal requirement of a two-step analysis for change of custody.

We require the two-step analysis for change of custody in order to protect and encourage stability in children's lives. That is a purpose which I fully support. But here the trial court specifically found that "neither parent has had any permanence as a family unit due to the constant shifting of the child since the date of the original divorce." I see no point in requiring a two-step analysis to protect stability when, as in this case, there is no stability to protect. I would make the lack of stability, rather than the parents' stipulation, the basis for omitting the usual two-step analysis in a case such as this.

VANDE WALLE, Chief Justice, concurring in result.

I write separately to express my concern about—and to distance my vote to affirm from—that portion of the majority opinion which concludes that because of "[t]he parents' agreement that there was a change of circumstances that required or necessitated a change in custody" the agreement "freed the judge from the constraints of the two-step analysis ordinarily required in modification proceedings and allowed him to treat this case as an original custody determination."

Parents are at liberty to decide custody between them without intervention of the courts. However, when they cannot agree and petition the courts to decide custody, our test is whether the change in circumstances is a change that requires or necessitates a change in custody. I have urged adherence to the two-step analysis. *E.g., Johnson v. Johnson,* 480 N.W.2d 433, 438 (N.D.1992) [VandeWalle, J., concurring specially]; *Anderson v. Anderson,* 448 N.W.2d 181, 183 (N.D.1989) [VandeWalle, J., concurring specially]. When the change in circumstance must be one which so adversely affects the child so as to "compel or require a change in custody to foster the best interests of the child," *Johnson v. Schlotman,* 502 N.W.2d 831, 834 (N.D.1993), I do not understand how the judge could not examine that change nor do I agree that it would authorize the trial court to treat the case as an original custody determination. We do not allow the parents' stipulation of child support to free the judge from the constraints of the child support guidelines. *E.g., State of Minn. v. Snell,* 493 N.W.2d 656 (N.D.1992).

The lack of permanence because of the constant shifting of the child since the date of the original divorce is obviously due to Patricia's life style for, as the trial court found,

"Her jobs since separation all lasted less than a year. Likewise, she has changed homes and cities several times since the separation. She has established no stable living arrangements of long duration." Roland's life style was in stark contrast. It appears it was so permanent as to be "rigid" and that the trial court's characterization of Roland as "being a stickler for detail and very rigid in the 'rightness' of his ways," as compared to the trial court's characterization of Patricia as being "best able to give love and affection without jeopardizing the relationship with the non-custodial parent" is the keystone for the trial court's decision to award custody to Patricia.

Notwithstanding the finding that "neither parent had any permanence as a family unit," I believe the best interests of the child are better served by adhering to the two-step analysis rather than permitting the trial court to proceed as if this were an original custody determination. The trial court did make findings on changed circumstances and found that the prior judgments were unworkable and not being complied with. The issue is whether the changes in circumstances require a change in custody. I realize that this makes it more difficult to affirm the trial court's decision in this matter. After examining the evidence record, I would have awarded custody to Roland for the greater part of the year and to Patricia during the summer. However, what I would have done at the trial level is not the standard which guides our functions as appellate judges.

In this case, our review is governed by the "clearly erroneous" standard of Rule 52(a), NDRCivP. That is a standard deferential to the decision of the trial court. I have recently indicated that in cases of child custody "in which there is not clearly a 'right' or a 'wrong' solution," "this court should not attempt to substitute its judgment for that of the trial court, even if we disagree with the result...." *Barstad v. Barstad*, 499 N.W.2d 584, 589 (N.D.1993) [VandeWalle, C.J., dissenting]. I have also expressed by belief that a continued pattern of circumvention of visitation may justify a change of custody in the best interests of the child. *Blotske v. Leidholm*, 487 N.W.2d 607, 611 (N.D.1992)

[VandeWalle, J., concurring specially]. That applies to other patterns which jeopardize the relationship with the non-custodial parent.

I agree the trial court should be affirmed.

MESCHKE, J., concurs.

SANDSTROM, Justice, dissenting.

I respectfully dissent.

North Dakota law provides: "Between the mother and father, whether natural or adoptive, there is no presumption as to who will better promote the best interests and welfare of the child." N.D.C.C. § 14-09-06.1. *See also*, N.D.C.C. §§ 14-09-04 and 14-09-06.

Given the testimony presented at the modification hearing, I am convinced that if the gender of the parties had been reversed, the result would have been the opposite. The majority mischaracterizes the evidence; it was the judge, not Roland, who introduced the concept of things "that might best be done by a woman." Roland testified he received help from his mother in learning to care for the child. In response to a question about toilet training, Roland testified:

"I did that before [Patty] went to Colorado.

    \*     \*     \*     \*     \*     \*

"I guess I started early last spring, we kind of worked with her. My mom helped me because my mom has raised kids before. So got a lot of help from my mom."

In response to a question about fixing the child's hair every morning, Roland testified:

"Um, I normally just pull it back and put it in a pony tail. I haven't gotten to the point where I can learn how to braid. So I have my mother assist me in helping her getting her hair braided. And I comb it. I wash it. And I generally just kind of put it in a pony tail."

The court, on the other hand, specifically assumed because Roland is a man, some tasks of child rearing would be inappropriate for him.

"THE COURT: In the event Rollie were the primary custodian, and in the event there was certain things in Amy's

training that might best be done by a woman, would it be your anticipation that you would be that teacher?

"THE WITNESS: No, Rollie is the teacher. And I just help him.

"THE COURT: Getting back to my question, in the event there are certain things that a girl should learn that is easiest to learn from a woman, would you be anticipating that you would be that woman?

"THE WITNESS: Yes."

I would reverse.